69 311
33 SC ²193

## Patton's Executor *versus* Hassinger.

1. A son over age, and working for himself, made the plaintiff's house his home; he was taken sick, and whilst living with plaintiff, the father declared that whoever would take care of his son should be well paid; this was communicated to plaintiff, who continued to take care of the son: the plaintiff demanded payment from the father who promised to pay: this was sufficient for the jury to infer the acceptance of the offer by the plaintiff.

2. Compliance with a proposition, especially where no notice of acceptance is required, is the most significant evidence of its acceptance.

3. The promise was not one to pay the son's debt, but an independent undertaking of the father. and therefore was not required to be in writing.

4. The original promise and the death of the son, were more than six years before suit. Within six years of the suit and before six years after the services had expired, the father said that the plaintiff had asked him to pay for the services, specifying them, and that he had told plaintiff as soon as he got so much money he would pay him. This was evidence to take the case out of the Statute of Limitations.

5. The recognition of a debt or of the instrument or circumstances of indebtedness accompanied by a promise to pay or such an acknowledgment as is consistent with such promise, when the statute has not run will prevent the bar of the statute in an appropriate case.

6. Yaw v. Kerr, 11 Wright 333, Suter v. Sheeler, 10 Harris 308, recognised.

October 5th 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Allegheny county*: No. 57, to October and November Term 1870.

This was an action of assumpsit, brought March 30th 1869, by George Hassinger against Robert Hardy, executor of Benjamin Patton, deceased.

The declaration was that the decedent in his lifetime, on the 1st of June 1859, in consideration that the plaintiff at his request would supply John Patton, the decedent's son, with boarding, attendance, &c., promised to pay the plaintiff therefor whatever they should be worth, and also on the 1st of June 1861 promised to repay the plaintiff the funeral expenses of his said son. The pleas were, "Non assumpsit," "Non assumpsit infra sex annos," &c.

The case was tried February 2d 1870, before Collier, J.

David Ingram testified: That John, the son of decedent, died at the house of the plaintiff in June 1861, he had been in ill health

more than a year, was not able to work, died of consumption, had been cut in the knee in June 1860, the decedent told witness that whoever would take care of John should be well paid for it, if he did not pay in his lifetime, they should have John's share, which would be twenty-five acres of land. John was then at the plaintiff's; witness told this to the plaintiff: " The old man was then apprehensive that John would never get well, and having no money past him said he would pay Hassinger or any one else who would take care of him. John was fifty years old when he died." The decedent died in the winter of 1867–1868.

Plaintiff gave evidence that he had paid John's funeral expenses.

Benjamin Hassinger testified that the decedent told the plaintiff to take care of John and give him whatever he needed, and he should be well paid for it. The plaintiff said he would take care of him, &c.

John Patton testified that in May or June 1863, the plaintiff asked witness to tell decedent to come to plaintiff's; witness told decedent plaintiff wanted to see him, but did not tell him for what; decedent went to plaintiff's house; when he came back he told witness that the plaintiff wanted him " to pay John's funeral expenses, and the trouble he had had with him while he was there sick;" he said he had told plaintiff that as soon as he got as much money he would go back and pay him;" he said he could not tell how much it would be, as he had not asked plaintiff; " he allowed it would be a good bit, for when there was death and sickness, there was always a good deal of trouble and expense."

There was other evidence of defendant's promise to pay for keeping John; also that the decedent in 1864 and afterwards previously to his death, received $1100 and upwards from the sale of land. John had of his own but $3.50, a watch and a gun.

The defendant's points, which were all refused, were :—

1. If the jury believe that John Patton was over fifty years of age, and had been for many years prior to his death working and managing for himself, and had for a long period of years made the plaintiff's house his home, and had been there until June 1860, without any contract or agreement between the plaintiff and Benjamin Patton; that the declarations of Benjamin Patton to David Ingram, " that whoever took care of John should be well paid for it, if he did not pay him while he lived, they should have John's share, which would be twenty-five acres of land," even if told to Hassinger does not entitle the plaintiff to recover, there being no evidence that the plaintiff agreed to said offer.

2. If the jury believe that John Patton worked for himself, and made his home at plaintiff's, as stated in the foregoing point, and so continued to make his home at the plaintiff's until a few weeks

before his death, without any express contract between plaintiff and Benjamin Patton, that Benjamin Patton would pay him for John Patton's boarding, &c., then the statement of Benjamin Patton to plaintiff "to take good care of John, and whatever he wanted or needed to give it to him, and he should be well paid for it," does not give the plaintiff a right to recover for anything prior to that date.

3. Plaintiff's claim in this case being for the debt of John Patton, he cannot recover, Benjamin Patton never having, in writing, promised or agreed to pay the same, and this rule under evidence applies not only to the claim prior to the conversation a few weeks prior to John's death, but also to the small part of it which accrued subsequently to that date, as there is no evidence to show that for that short period, the plaintiff relieved John and looked to the father for payment; it was still John's debt, and not the debt of the father, and a promise to pay the same should have been in writing.

4. If Benjamin Patton was liable, the claim is barred by the Statute of Limitations, there being no evidence in the case sufficient to take the case out of the statute.

5. Under all the evidence in the case, the plaintiff is not entitled to recover.

The verdict was for the plaintiffs for $495.52.

The defendant took a writ of error, and assigned the refusal of his points for error.

*R. & S. Woods*, for plaintiff in error.

*Hopkins & Lazear*, for defendant in error.

The opinion of the court was delivered, October 23d 1871, by

THOMPSON, C. J.—The plaintiff below declared upon a contract with the decedent for furnishing his son John Patton, an invalid, with meat, drink, washing, lodging, attendance and other necessaries, and on a promise to pay him for the funeral expenses by him incurred in burying his said son. There were several pleas put in to the *narr.* by the executor, such as non assumpsit—non assumpsit infra sex annos, payment with leave, &c. So far as these pleas were a traverse of the cause of action of the plaintiff, the jury have found them all against the defendant below. The only question for us, therefore, is, whether this was the result of improper instructions to the jury, as is the allegation of the plaintiff in error here.

The defendant below, in his first point, asked the court to charge, that as John Patton was a man of fifty years of age and hale, before the occasion had arisen which gave rise to the alleged promise by the testator, in his declaration to David Ingram,

[Patton's Executor *v.* Hassinger.]

"that whoever took care of John should be well paid for it, if he (the testator) did not pay him while he lived, they should have John's share, which would be twenty-five acres of land," "even if told to Hassinger does not entitle the plaintiffs to recover, there being no evidence that the plaintiff agreed to said offer." This instruction the court refused.

There was testimony to show that this promise was communicated to the plaintiff, and that in fact he did take care of the said John. This, together with the plaintiff's demand for pay, and the testator's declarations afterwards to the effect that he would pay when he got the money, were abundantly sufficient to authorize the inference by the jury, that the proposition was accepted. That it was performed there is no dispute. There is nothing more significant of the acceptance of a proposition than compliance with it, especially where notice of acceptance is not required. The idea that because John had made the plaintiff's house his home for years, when he was at all times able to pay his board and lodging, was not a sufficient circumstance to negative performance by plaintiff, on the foot of a contract, at a time when he was unable to work, and had no means otherwise to maintain himself. The court under the circumstances of the case, we think, was entirely right in refusing the point.

2. The next point was also rightly refused. It assumed the great question of the case on part of the defendant, namely, that there was no contract to pay on part of the defendant's testator. The court in the last above-mentioned point refused it because, as the judge thought, there was evidence on this very point. Our remarks upon that point is sufficient for this. We also think there was no error here.

3. It would have been a great mistake to have charged as requested in the defendant's third point, that because the promises therein mentioned were not in writing, they were not binding on the defendant's testator. The promises were not to pay John's debt. It was an independent undertaking and contract of the father for himself, on a sufficient consideration, viz., to take care of, board and lodge his sick son, who was unable to take care of and pay for himself. The consideration was both legal and moral. The Statute of Frauds had nothing whatever to do with it.

4. The next point called for a charge that the debt was barred by the Statute of Limitations, and that there was no evidence in the case to take it out of the statute. This was rightly refused, we think. This point was predicated of the idea that there had been no original promise, and of this we have already expressed the opinion, that if the testimony was believed, there was.

The testimony to take it out of the statute, or rather to prevent the running of the statute, were the declarations of the testator. It was proved, and not contradicted, that he said after

[Patton's Executor v. Hassinger.]

having been to see the plaintiff at the latter's request, on being inquired of, what the plaintiff "wanted him for, he said he wanted him to pay John's funeral expenses and the trouble he had had with him while sick; I asked him," says the witness, "if he had done it, and he said he had not; he said he told George (the plaintiff) that as soon as he got so much money he would go back and pay for it." "I asked him," says the witness, "how much it would be? He said he could not tell, as he had not asked him; he said he would get the money in a few days, and then he would go back and pay it; he allowed it would be a good bit, for where there was death and sickness, there was always a good deal of trouble and expense."

This was what the testator declared he had told the plaintiff, and there was nothing in the testimony to impeach the witness, a son of the testator, or impugn his veracity. By the same witness we are informed that his father had said in substance the same thing a year before. Thus was there proof that the parties were face to face when the acknowledgment and new promise were made. This, says the witness, was in May or June 1863; and this suit was brought, the record shows, March 30th 1869, less than six years thereafter, if the witness was accurate as to the time of the acknowledgment.

What debt was referred to, is described in the promise proved. It referred expressly to the debt due for keeping the testator's son John in his sickness, under the proposition and offer of 1860, superadded to which was an assumption of the debt incurred and paid by the plaintiff in his funeral. As already said, there was a sufficient consideration for this.

The rule deducible from Suter v. Sheeler, 10 Harris 308, and other cases, seems to be, that if the evidence prove a recognition of a debt, or of the instrument or circumstances of indebtedness, accompanied by a promise to pay, or such an acknowledgment as is consistent with a promise to pay when the statute has not run, either will prevent the bar of the statute in an appropriate case. There is in such a case identification and promise both. In Yaw v. Kerr, 11 Wright 333, identification by reference to a note in a third party's hands, was held sufficient to sustain and make applicable the promise, which took the case out of the statute. Here the only question is the identification of the claim acknowledged and promised to be paid. The testimony was sufficient for that, and that being so, the amount was ascertainable by the jury. We do not intend to relax the rules of law on this subject in the least, and if there is any appearance of that in this opinion, it arises out of the peculiarity of the facts of the case, and not in any change of the law. As to the Statute of Limitations, the facts were left to the jury under proper instructions.

It was proved and found by the jury, that the testator in his lifetime was able to pay the indebtedness which he had assumed,

[Patton's Executor *v.* Hassinger.]

on the condition of being possessed of a sufficiency of money for that purpose. The instructions on this point were unexceptionable.

I ought further to say that the decedent left no share of land to John, and that John had neither land nor money except a trifle.

There is nothing in the remaining two points which requires notice, and the judgment must be                    Affirmed.