## Englerth v. Battersby.

*Joseph A. Keough,* for plaintiff; *A. L. Mulhern,* for defendant.

GLASS, J., February 19, 1931.—This is an action of assumpsit by the plaintiff to recover the sum of $300 for professional services in performing a surgical operation upon one Naomi Prendergast, who, while a passenger in an automobile of the defendant which was driven by him, was injured in an acci-

dent. The case was tried by a judge without a jury, and a finding was made in favor of the plaintiff in the said sum. We have before us motions for a new trial and for judgment for the defendant *non obstante veredicto*.

In view of the finding, all the evidence and proper inferences therefrom favorable to the plaintiff must, under the familiar rule, be taken as true, and all unfavorable to him rejected: Hunter *v.* Pope, 289 Pa. 560, 562; Frank *v.* Reading Co., 297 Pa. 233; Snyder *v.* Penn Liberty Refining Co., 302 Pa. 320.

Viewed from this standpoint, the trial judge, who was the trier of the facts, could reasonably have found as follows: In the early part of March, 1927, the defendant, while driving an automobile on the pike near Pottstown, and having Miss Naomi Prendergast as a passenger, was involved in an accident in which she was seriously injured. The defendant took her to the Pottstown Hospital and requested that she be treated there. After a consultation with the surgeon of the hospital, Doctor Wills, and a Doctor Nassau, of Philadelphia, who had been called in at the request of the defendant, it was decided that amputation of the right leg between the thigh and the knee was imperative in order to save her life. Neither Doctor Nassau nor Doctor Wills wanted to operate; and Doctor Nassau, on being asked to suggest another surgeon, mentioned Doctor Englerth, the plaintiff, who was summoned and who performed the surgical operation successfully. This suggestion was made in the presence of the defendant and acquiesced in by him. The defendant had called another consultant prior to consulting Doctor Nassau, and paid him a fee, and also paid Doctor Nassau a consultation fee of $100. The hospital bills, which were charged to the defendant, were paid by him. The reason he assigned for paying the bills was that he felt he was liable. The defendant, Battersby, testified as follows:

"Q. Did you ever sign any commitment slips at the hospital at Pottstown, wherein you agreed to be responsible for the care— A. No, I don't think I did, but I told them, and I paid everything right as it went along. . . ."

By the Court: "Q. Do you mean you told them you were liable? A. I told them that I would pay the hospital bills. Q. Why would you have to pay the hospital bills? A. Why, because she was injured in my car. Q. You felt you were liable? A. I felt I was liable. I was insured, and I felt I was liable, and that's what I thought would be right to do, and I done that—about $1100."

The bill for the surgical operation which was presented by the plaintiff was $300.

Counsel for the defendant, in his motions for a new trial and for judgment for the defendant *n. o. v.*, contends that the evidence did not establish a contractual relation between the parties, either express or implied. A careful review of the testimony convinces us that there is no merit in that contention. There is ample authority to sustain the plaintiff's claim. It has been held that a person may by express contract make himself liable for medical services rendered to himself or another, and the rendering the services is sufficient consideration to support the contract. It has also been held that the law does not raise an implied promise on the part of a person who requests a physician to perform services for another to pay for the services so rendered, unless the relation of such person to the patient is such as puts him under a legal obligation to provide medical attention for the patient, or unless the circumstances, including acts and conduct, are such as to show an intention on his part to pay for the services, and it is immaterial whether or not the case is one of emergency: 48 C. J. 1163; see, also, 40 Cyc. 2809. In the instant case the defendant felt that he was liable and was willing to

pay the medical expenses. An implied promise was, therefore, raised on his part to pay for the reasonable value of the services, the amount to be paid not having been expressly agreed upon: 48 C. J. 1166. The employment of a physician, surgeon or dentist without express agreement as to compensation raises an implied agreement on the part of the party employing him to pay him the reasonable value of his services: 48 C. J. 1157.

The plaintiff operated as a result of the consultation between the defendant and Doctor Wills, who had charge of the case as resident surgeon. It was imperative, in order to save the patient's life, to amputate her leg. The operation had to be performed ; some one had to do it. Neither Doctor Wills nor Doctor Nassau, who was the consultant, and whom the defendant paid, wanted to operate. The plaintiff was then called in to do so, and performed the operation successfully, and he is entitled to recover. He is in the same category as a consultant. It has been held that a physician or surgeon summoned in consultation by another may recover of the patient compensation for his services: 48 C. J. 1162; Tyson v. Baizley, 35 Pa. Superior Ct. 320; Richter's Estate, 11 D. & C. 485; Sherman's Estate, 6 Pa. C. C. 225. In this case, the defendant having agreed to pay for all medical services in connection with the treatment of the patient, and the surgical operation being incident to that treatment, he became liable for its payment, provided the charges were reasonable.

The promise to pay for medical services in this case is not within the statute of frauds. In 27 C. J. 144, § 30, it is said an oral promise to pay for medical services rendered to another is not within the statute, if such services are rendered at the request and on the sole credit of the promisor: Boston v. Farr, 148 Pa. 220. In that case the promise was treated as an original undertaking to pay, not as a guaranty, and, therefore, not within the statute of frauds: Patton v. Hassinger, 69 Pa. 311. In Banfield v. Davidson (Tex. Civ. App.), 201 S. W. 442, where the defendant injured a boy and took him to the plaintiff's hospital and requested plaintiff to treat the boy's broken leg, the defendant's agreement to pay plaintiff for services was held to be an original undertaking and not within the statutes.

In Lake View Hospital Association, etc., v. Nicholson, 202 Ill. App. 205, where hospital services were furnished to a person at the request of the physician who had run over such person with his automobile and had brought her to the hospital in an unconscious condition, and such physician agreed to be responsible for her bill, and statements of account were made out to the physician and mailed to him, the promise of the physician was held to be an original undertaking. See, also, Kirby v. Kirby, 248 Pa. 117, where it is held that when the leading object of the promisor is to subserve some interest or purpose of his own, notwithstanding the effect is to pay or discharge the debt of another, his promise is not within the statute.

The testimony clearly shows an unequivocal engagement of professional services by direction of the defendant, and the law implies liability to pay therefor: Tyson v. Baizley, supra; Boston v. Farr, supra; Klopp v. Sternberg, 76 Pa. Superior Ct. 209.

The fee of $300 charge by the surgeon in this case was reasonable. The question of what is a reasonable charge is one of fact, and that has been resolved in favor of the plaintiff, and it is amply supported by the evidence.

After a careful consideration of the case, the court, en banc, finding that no error was committed by the trial judge in his rulings on evidence, dismisses the motions for a new trial and for judgment for the defendant non obstante veredicto.