CAROLINE MAHAN, ADMINISTRATRIX, ETC., RESPOND-
ENT, v. ELIZABETH WALKER, APPELLANT.

Argued November 28, 1921—Decided June 19, 1922.

1. Proof of ownership, without more, of an automobile which was
   being driven upon a public highway, raises a presumption of
   fact that the automobile was in the possession of the owner, if
   not personally, then through his servant, the driver.
2. Such proof likewise raises a like presumption that the driver
   was acting within the scope of his employment.
3. Both or either of these presumptions may be entirely wiped out
   by uncontradicted proof to the satisfaction of the court to the
   contrary, in which case the matter is a court and not a jury
   question. Citing *Doran* v. *Thompson*, 76 *N. J. L.* 754.
4. If, however, the proof is contradictory, or subject to contra-
   dictory interpretations, the question becomes one for the jury.
   Citing *Missell* v. *Hayes*, 86 *N. J. L.* 348.

On appeal from the Supreme Court.

For the appellant, *Harry Heher.*

For the respondent, *Martin P. Devlin.*

The opinion of the court was delivered by

WHITE, J. This is an appeal from a judgment of the Su-
preme Court in favor of the plaintiff, whose intestate, Mahan,
while riding his bicycle on a public highway, was killed in a
collision with defendant's automobile driven by her son-in-
law, Buckley. Upon a rule to show cause all questions were
disposed of except those relating to whether Buckley was or
was not, at the time of the accident, the servant (in a legal
sense) of the defendant and acting within the scope of his
employment. *Mahan* v. *Walker,* 96 *N. J. L.* 78. This ques-
tion the learned trial judge left to the jury, overruling de-
fendant's motion for a nonsuit and also her motion for a
directed verdict in her favor, and because of these two alleged
errors the appeal is taken.

As to the motion for a nonsuit (assuming for the moment that the ruling upon that motion is now important, although subsequent evidence cured the point raised in support of the motion, *Dennery* v. *Great Atlantic and Pacific Tea Co.*, 82 *N. J. L.* 517, and cases there cited), the only evidence up to that time connecting the defendant with the accident was supplied by plaintiff's agent, who testified to a conversation with the defendant, after the accident, as follows: "I told her I had learned she was the owner of the car that had caused the accident, and she said yes, she owned the car and she knew about it, and Mr. Buckley, her son-in-law, was out with the mechanic trying the car out; that it had been in the repair shop and she had it repaired, and they were out on the road testing it out." * * * "that Mr. Buckley and the mechanic were out with the car after the repairs had been made to try it out." It is urged that this statement by the defendant was not, except as to her ownership of the car, evidential because obviously it was "hearsay," the defendant not having been present at either the repair shop or at the trying out. The difficulty with this point is that the essential part of the statement, viz., that defendant was the owner of the car, was admittedly evidential. Upon that point defendant was speaking from her own knowledge. Standing alone that one fact was sufficient. This court, in *Missell* v. *Hayes*, 86 *Id.* 348, in discussing *Doran* v. *Thompson*, 76 *Id.* 754, where it was held that a verdict for defendant should have been directed, said: "The only element in the case tending to show that the daughter was acting as the servant of the father, was the bare fact that the father owned the automobile which, being personal property, was, presumably, in the absence of evidence to the contrary, in his possession or the possession of his servant at the time of the accident, possession being the badge of ownership of personal property. This presumption, however, in that case was overcome by the uncontradicted proof that in fact the automobile was not in the possession of the owner or his servant, but that, on the contrary, it was in the possession of a third party [who happened to be his daughter] who was using it for her

own pleasure and the pleasure of her friends, and not upon the owner's business." And, again, in *Dennery* v. *Great Atlantic and Pacific Tea Co.*, *supra*, adopting the language of Lord Denman in *Joyce* v. *Capel*, 8 *Car. & P.* 370, this court said: "Evidence that the wagon which ran over plaintiff was marked with defendant's name was sufficient to justify the inference that defendant was its owner, and such inference established *prima facie* that defendant was in possession and control of the wagon by the driver, its servant."

This established doctrine, viz., that proof of defendant's ownership of an automobile being driven on a public highway raises a presumption of fact that such automobile is in the possession of the defendant through his servant, the driver, necessarily includes the presumption of fact that the servant in so driving the car is acting within the scope of his employment, for, if he were not so acting, the car would not in fact be in the possession of the owner, but would have been removed from such possession.

We think, therefore, that upon the proof of ownership alone, unaccompanied by any evidence tending to show possession at the time in anyone else than the owner or his servant or that the servant was not acting within the scope of his employment, the motion for a nonsuit was properly refused. If we had any doubts upon this point they would be dissolved by the further evidence in the plaintiff's case of her agent, who further testified as to the conversation with the defendant, after the accident, as follows: "I asked Mrs. Walker if Mr. Buckley was the man who drove the car for her, and she said yes."

As bearing upon the motion for direction of a verdict for defendant, additional facts appeared in defendant's case as follows: Buckley was defendant's son-in-law, and since her husband's death, nine years before, had lived with defendant as a member of her family, and was the only one who drove her automobile for her, and the only one of the family who had a driver's license. A few days before, the car "not running right," defendant told Buckley on the day of the accident "to take it down to Smith's, to his repair shop, and have

97 N. J. L.                    Mahan v. Walker.

it repaired." Buckley did so and stayed with the car some two or three hours while Smith made the repairs, and then, according to Buckley's testimony, Smith said to him: "I cannot properly adjust the carburetor standing here in the garage, because it is not pulling on a direct load; it must be taken out on the road. Will you drive it?" to which Buckley replied that he would, and he thereupon drove the car out on the road, and it was while he was driving, with Smith lying on the running board and mud guard with the hood open, adjusting the carburetor, that the accident occurred. Smith testified that he told Buckley it would be necessary to take the car out and adjust it on the road, and that he asked Buckley to drive the car so he could work on it. Defendant testified that she did not know it would be necessary to take the car out on the road to adjust it and that she gave Buckley no instructions in that regard.

The learned trial judge charged the jury at defendant's request: "If you find that the driver, Buckley, had authority from the defendant only to take the automobile to the repair shop and return it when the repairs had been made, and that his act in driving the car along the Brunswick pike, for the purpose of testing its machinery, was without authority from the defendant, and without her knowledge or consent, you must find a verdict for the defendant." It is now urged that this was not enough and that a verdict should have been directed for the defendant, as also requested. We think not. It seems to us that defendant's instructions to Buckley, particularly in view of his position in her family, were materially more than to "take the automobile to Smith's repair shop." If she had stopped there and Buckley had been an ordinary chauffeur, it would seem quite clear that in doing more than that Buckley would have been acting beyond the scope of her directions. But she said that, and (especially in view of the fact that Buckley was her son-in-law) more, viz., "and have it repaired." What did that mean? Did it mean "order Smith to repair it?" It did not say so. It said "have it repaired." Suppose Buckley had brought the car home without the carburetor having been adjusted, so that when the

defendant next went out to drive, carburetor trouble had immediately developed, and when asked why that was Buckley had said: "Why, Smith said he could not adjust the carburetor unless the car was being driven out on the road and he had no one there to drive it, and asked me to do so, but you had not told me to do that, so I refused, with the result that the carburetor could not receive the necessary adjustment." Would not the defendant very properly and naturally have replied: "Why, I told you to have the car repaired, and if it was necessary for you to drive it on the road while some of the repairing was done—that is, what you should have done in order to do what I told you to do, viz., to have the car repaired." We think she would very properly have said words to that effect, if not more, particularly as Buckley was her son-in-law, and, presumably, was expected by her to use his own judgment to a fairly reasonable extent in carrying out not only the letter but also the purpose of her desires and instructions.

Under all the circumstances, we think the point involved a jury question and that no error was committed in so treating it.

The judgment is affirmed.

*For affirmance*—THE CHANCELLOR, PARKER, BLACK, WHITE, WILLIAMS, GARDNER, VAN BUSKIRK, JJ.   7.

*For reversal*—THE CHIEF JUSTICE, SWAYZE, BERGEN, KATZENBACH, ACKERSON, JJ.   5.