Frank *v.* Reading Co., Appellant.

234

Argued January 28, 1929. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

*Clarence J. Buckman,* with him *Webster S. Achey,* for appellant.—The deceased was guilty of contributory negligence: Lessig v. T. & L. Co., 270 Pa. 299; Patterson v. R. R., 210 Pa. 47; Kinter v. R. R., 204 Pa. 497; Benner v. R. R., 262 Pa. 307, 312; Earle v. R. R., 248 Pa. 193.

*Harry E. Grim* of *Grim & Grim,* for appellee.—Decedent was not guilty of contributory negligence: Fuher v. Coal Co., 272 Pa. 14; Kennelly v. Warapoyak, 266 Pa. 94; Sontum v. Ry., 226 Pa. 230; Hugo v. R. R., 238 Pa. 594; Schwarz v. R. R., 218 Pa. 187; Unger v. R. R., 217 Pa. 106; Woodruff v. R. R., 231 Pa. 640.

The presumption is that decedent stopped at the right place and continued to perform his duties as to observance of approaching trains: Razzis v. R. R., 273 Pa. 550; P. R. R. v. Weiss, 87 Pa. 447; P. R. R. v. Weber, 76 Pa. 157; Hugo v. R. R., 238 Pa. 594.

Where the witness who testified to seeing the accident stated that deceased did not stop, look and listen, but the credibility of such witness is seriously attacked, the case is for the jury: Kelly v. R. R., 274 Pa. 470; Devlin v. Light Co., 198 Pa. 583; Razzis v. Ry., 273 Pa. 550; P. R. R. v. Weiss, 87 Pa. 447.

It has been held that a traveler who has stopped, looked and listened at the proper place is not bound to stop and look between the tracks thereof: Thomas v. R. R., 275 Pa. 579; Murtagh v. R. R., 271 Pa. 290; Tressler v. R. R., 40 Pa. Superior Ct. 224; Barthelmas v. Ry., 225 Pa. 597.

There are three witnesses who testify positively that the usual locomotive whistle, the bell of the engine and the crossing bell were not ringing. This testimony is clearly positive testimony and not negative, and its effect was for the jury: Cox v. R. R., 214 Pa. 223; Longenecker v. R. R., 105 Pa. 328; Haverstock v. R. R., 171 Pa. 101.

OPINION BY MR. JUSTICE KEPHART, March 18, 1929:

Plaintiff's husband was killed in a right-angle collision with defendant's train at a grade crossing, and in her action for damages she recovered $8,000, on which judgment was entered. The tracks of the railroad, at the point of collision, are elevated above the level of the public road some three or four feet and the grade on each side of the railroad crossing is about eight per cent. There are two tracks at the crossing so located that the distance between the innermost rails of each track is twenty-four and one-half feet. Approximately three hundred feet to the south there is a switch which connects a passing siding with the main line tracks. A little farther away, in the same direction, is a water tank from which engines are supplied with water. An automatic signal bell is maintained at the crossing and there is a stop, look and listen sign on the westerly side of the railroad nearest the south-bound track, and about eighteen and one-half feet therefrom.

The deceased owned and resided on a farm which is located a few hundred feet from the crossing, which he had used almost daily. He was returning from delivering milk to the station driving his Ford truck or automobile, and had to pass over the crossing to reach his home. On this morning he was last seen by plaintiff's witnesses when about seventy-five yards from the track, his automobile then traveling about twelve or fifteen miles an hour. Defendant's train collided with the car a few minutes after he had been last seen, and the result of the collision was his death and that of one of his two children with him in the car.

In determining the questions involved in this appeal, all the relevant evidence and inferences therefrom must be viewed in a light most favorable to the injured person, and must be taken as true; all such unfavorable evidence or inferences must be rejected: Vendig v. Union League of Phila., 291 Pa. 536; Thomas v. Penna. R. R. Co., 275 Pa. 579, 581.

It is urged no negligence of defendant was shown. The statement of claim avers negligence in a failure to give proper signals of the approach of the train by ringing a bell or blowing a whistle, which should have been done had the train been properly operated. There was positive evidence that the bell was not rung, and no warning given by a whistle. Defendant admits the presence of this evidence but urges there was nothing in plaintiff's case to show the automatic bell at the crossing was not operating, while defendant's evidence indicates this bell was ringing; hence plaintiff had the necessary warning.

While the ringing of a bell at a crossing would no doubt warn a driver of danger, it cannot be taken as a fact concluding an injured person's right to recover. Its presence in operation does not relieve the carrier from giving the customary notice of the approaching train. These bells ring from other causes. They may be set off by a shifting movement of a train as well as by a train that has passed or is about to pass, or by a short-circuit, or again by any train that is within the electrical contact on either side. Here defendant's witness says the train on the siding had started the bell, though it had not passed the crossing. The bell was ringing before and after the train causing the injury went by. For these reasons the ringing of a bell at the crossing does not give adequate and certain warning of the approach of a train, on which the traveling public has a right to depend: Gerg v. P. R. R. Co., 254 Pa. 316, 320. Evidence as to ringing of crossing bells may be shown as proof of contributory negligence, but is ordinarily for the jury. Such evidence cannot be accepted as showing that defendant has discharged its duty, nor is it conclusive that a pedestrian or a driver must know a train is coming and should be governed accordingly. Here there is no evidence to show the ringing of this particular bell came from the approach of the train that caused the accident.

The more important question is, was the deceased guilty of contributory negligence or was his negligence the cause of the accident? Some controversy is raised over the character of car deceased was driving, whether a truck or automobile. For the purpose of this discussion it is immaterial; if a truck, and of the length of fifteen or twenty feet, the reasoning that follows is even more apparent. Defendant contends that when the deceased approached the tracks and later entered the space of twenty-four and one-half feet between the two tracks, he should have stopped, looked and listened at both places before attempting to cross the track on which the train was running. When he made the first stop, if he could not see down the track, because of the train on the passing siding, he should have gotten out of his car, walked to the track and made an observation before attempting the crossing. These acts, defendant urges, follow the rules frequently announced by this court that, where the view of the tracks is obscured, the driver or pedestrian is required to use reasonable means for his safety, including that of going forward from his vehicle to observe the tracks (Benner v. P. & R. Ry. Co., 262 Pa. 307; Silver v. Pittsburgh, C., C. & St. L. R. R. Co., 252 Pa. 1; Earle v. P. & R. Ry. Co., 248 Pa. 193; Kinter v. P. R. R., 204 Pa. 497) ; and, further, where one enters the tracks of a railroad, having complied with the fixed duty before entering, he is not relieved of the obligation to continue to look, and, if there is intervening space between the tracks where the driver may better see and hear, he is bound to stop, look and listen quite as much as he was before entering on the first track: Keppelman v. P. & R. Co., 190 Pa. 333; Barthelmas v. L. S. & M. S. Ry. Co., 225 Pa. 597; Siegel v. N. Y. Cent. R. R. Co., 67 Pa. Superior Ct. 307.

Plaintiff is entitled to the benefit of the presumption that at both places deceased did his full duty before committing himself to the crossing, there being no evidence on her side showing that he did not stop, look and listen.

This presumption extends to everything that is reasonably necessary to be done for the driver's safety. It includes not only the assumed fact that one stopped, looked and listened before attempting to cross the tracks (Sontum v. Mahoning & Shenango Ry. Co., 226 Pa. 230; Hugo v. Baltimore & Ohio R. R., 238 Pa. 594; Terry v. Delaware, L. & W. R. R. Co., 60 Pa. Superior Ct. 451, 455), but also that he went on the tracks to look for approaching trains when his vision was obstructed by objects on or close by the railroad. To balance these suppositions, defendant is entitled to the benefit of the theory that its agents did their full duty in approaching the crossing. To rebut the latter, and as showing defendant's negligence, the jury found defendant did not do its full duty when it failed to give the neccessary warning.

Defendant is also entitled to the benefit of another rule, that if the presumed fact in plaintiff's favor is opposed to infallible physical facts, the former cannot exist. Here, if deceased's vision had not been interfered with or obscured, he could have seen the train approaching for more than half a mile, and his duty was to wait until it passed. The presumption that he looked to see if the train was approaching and found none, could not stand in the face of the physical facts, for under them he must have seen the train coming, when it would be dangerous to cross (Grimes v. P. R. R., 289 Pa. 320; Reigner v. P. R. R., 258 Pa. 257; Miller v. West Jersey, etc., R. R., 257 Pa. 517; Hanigan v. P. & R. Ry., 257 Pa. 236); but in this case the evidence shows there was a train on the siding and plaintiff contends that it, with the smoke and steam, so shut off deceased's vision that he could not see for more than three or four hundred feet. This circumstance would prevent the last-named rule from operating as a matter of law, and, the facts connected with it would be for the jury. So far, in plaintiff's case, there was nothing to militate against the assumed facts.

Considering further the question of intervening space between the tracks and the duty of the driver to stop, look and listen before entering the other track, it should be noted that this rule is subject to a very important limitation. In the Siegel Case, supra, the distance was fifty feet. There could be no hesitancy in a driver stopping in that space, making his observation and waiting if necessary, but the situation here is quite different. We have a space of twenty-four and one-half feet between the two tracks, both of which are used for main-line operations. To come to rest safely in this space is a difficult matter. Exactitude cannot be required of one in his computation of clearance for his car, and the distance there available would require very close attention as to where the car was to be halted. If it were fifteen feet in length, there would not be over three or four feet clearance on either end,—a rather uncomfortable space to be in, with a heavy railroad train moving at a rapid rate of speed, immediately in front and possibly behind. Furthermore, persons cannot always judge with accuracy the sweep of a moving train. Sometimes cars overhang, which is very important. Hence, we cannot say, as a matter of law, that the deceased violated the rule announced as to stopping and waiting in the intervening space. This question, as a rule, should not be worked out through the trial judge but rather be left to the jury to determine whether due care was exercised. But in situations such as here presented, the driver must make his observation immediately on entering the first track and must continue to look; if he can see the approach of the train in time to avoid an accident, he will be chargeable with negligence if he does not do so.

Complaint was made that the court erred in permitting witnesses to testify as to the rate of speed of the train. We are not satisfied that this was error.

A more serious matter is presented, however, in the charge of the court. It is so vital that on it we are compelled to reverse the case. The trial judge in comment-

ing on the evidence said that the presumption is that plaintiff stopped, looked and listened before entering the tracks, and "there was no evidence to the contrary." This statement was nowhere corrected in the charge. As this was one of the crucial points of the case, the harm such statement would do defendant may be easily seen. Two of defendant's witnesses testified with positiveness that the deceased did not stop until he drove down the hill into the train. Keller testified that he first saw the car approaching some distance away and watched it as it went forward toward the track. He thought it would stop, but it kept on getting closer and closer to the track until it struck the engine. He saw the car hitting the train, the two boys and the man knocked out of it, with the milk cans thrown everywhere. The car did not stop from the time he first saw it coming down the road. Another witness testified to the same affect and a third witness gave similar evidence. The cross-examination of these witnesses attacked their credibility, and because of their answers we cannot accept their statements as conclusive: Kelly v. Director General of R. R., 274 Pa. 470; Unger v. Phila., B. & W. R. R. Co., 217 Pa. 106; Patterson v. Pittsburgh, C., C. & St. L. R. R. Co., 210 Pa. 47. The trial error, however, is of such substantial nature that it may fairly be included within the exception taken in this case. The jury was told to disregard the evidence entirely. If they had believed it, plaintiff could not have recovered. For this reason, the assignment of error bearing thereon is sustained.

The judgment of the court below is reversed with a venire facias de novo.