Furer *v.* May, Jr., Appellant.

Argued May 1, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Charles F. Patterson* of *Patterson & Sherrard,* and with him *Elmer G. Klaber,* for appellant.

*Samuel G. Wagner* of *Wagner & Wagner,* and with him *George S. Goldstein* and *Benjamin Jacobson,* for appellee.

OPINION BY CUNNINGHAM, J., October 3, 1934:

Plaintiff, as a result of the trial of an action of trespass against Harry C. May, Jr., recovered a verdict of $1,500; defendant's motion for judgment n. o. v., based upon his point in writing for binding instructions, was denied and he has appealed from the judgment entered upon the verdict. The incident out of which the action arose, an automobile accident, occurred on November 9, 1930,—more than two years prior to the trial.

We may thus summarize the material averments of plaintiff's statement: While he was driving his Ford coupe west on the right-hand side of Fifth Avenue in the City of Pittsburgh and approaching the intersection of Beechwood Boulevard with that avenue, another automobile, averred to have been "under the charge, custody and control of the defendant, Harry C. May, Jr.," was being driven in the same direction and in the rear of plaintiff's car. When the cars reached the intersection, the driver of the one in the rear attempted, without warning, to pass plaintiff on

the left and operated his car so negligently that ,it collided with the left side of the front fender of plaintiff's car, resulting in personal injuries to plaintiff and damage to his car.

An affidavit of defense was filed in which the defendant denied that any car under his "charge, custody and control," was "caused or permitted to come in contact or collision" with plaintiff's car upon the date of the accident, and in which he specifically averred that "no car owned, operated or controlled," by him collided with the car in which plaintiff was then riding.

That plaintiff's injuries and property damage were caused by the negligence of the driver of the car which attempted to pass, and collided with, plaintiff's car was not seriously contested at the trial; the issue centered upon the identity of defendant with that driver. Upon this appeal, therefore, the only question involved is whether the evidence introduced by plaintiff, when read in the light most favorable to him, justified the trial judge in sending the case to the jury.

The accident occurred between five and six o'clock on a Sunday afternoon, November 9, 1930, and plaintiff was accompanied by a colored employe of a garage near the laundry which he operated. This witness could not be located when the case came on for trial. The driver of the other car was accompanied by a young lady. When the collision happened, plaintiff lost control of his car and it was wrecked against a telegraph pole; the other car continued along the cartway for an approximate distance of 150 feet; it was then stopped and backed. Plaintiff, after describing the accident, continued: "Then I was trying to get out of the car. I could not talk a word. I just discovered my teeth was hanging down so loose I could not talk a word. In the meantime, the other fellow backed up and stepped out of the car. In fact, he had a young girl with him. They both stepped out of the

car. He felt kind of sorry. He gave me his full name, plate license, that was all."

Later, plaintiff testified he had never seen the driver of the other car before the accident nor had he seen him since that day.

When recalled, plaintiff thus amplified his statement of the occurrences immediately after the accident: "Q. Did he give you anything when he got out of the car, what did he do? A. He gave me his full name and address. Q. Did you mark it down? A. Yes, I took a card from my pocket, a paper, and marked it down. Mr. Patterson: [counsel for defendant] Q. At the time? A. At the time. (Plaintiff's exhibit 1 marked.) ...... Mr. Goldstein: [counsel for plaintiff] Q. What name did he give you? A. Harry C. May, Jr. Q. What address did he give you? A. Just this address, 5861 Douglas Street. Q. Did you look at his car? A. I did. Q. Did you note the license number of his car? A. Plate license number, I took it down. Q. Took it down right then? A. Yes, sir. Q. What license? A. 7-N-296." The memorandum made by plaintiff was admitted in evidence over the objection of counsel for defendant, and plaintiff stated, upon his cross-examination, that his conversation with the driver of the other car took place about midway between the cars.

There was also evidence on behalf of plaintiff that he consulted a lawyer and gave him the memorandum; that the lawyer wrote a letter under date of November 28, 1930, addressed to "Harry C. May, Jr., 5861 Douglas Avenue, Pittsburgh, Pa.," in which he said, inter alia, "Mr. Furer informs me that you collided with his car as you were about to pass him," and invited the addressee to communicate with him within five days if he was interested in the adjustment of the claim. No formal reply to this letter was ever received, but the writer testified that counsel for de-

fendant notified him when the action was brought that May "was in no way concerned" with the accident. The summons was served personally upon defendant, together with a copy of plaintiff's statement, on February 6, 1931. Defendant did not appear in court during the trial, but we find nothing upon the record, as printed, to support the remark of the trial judge, made in the course of his opinion, that defendant's counsel stated "he had advised him not to appear as he had not been sufficiently identified as the driver of the car."

The case was tried November 30, 1932, and although plaintiff and his counsel were advised by the affidavit of defense, filed nearly two years prior to the trial, of the denial by defendant that any car "owned, operated or controlled" by him collided with plaintiff's car, no competent evidence was offered by plaintiff with respect to the registration in the Department of Revenue of the motor vehicle bearing registration plates "7-N-296" for the year 1930. At two places in his testimony plaintiff testified he copied this number upon his memorandum, offered and received in evidence, from the plates upon the car which ran into him. Prima facie evidence of the ownership of this car was readily available to plaintiff.

Indeed, one of the purposes of the legislation requiring the registration of motor vehicles was to assist, when accidents occur upon public highways, in the identification of the cars involved and of their owners.

Both drivers were examined at the police station shortly after the accident, but there was no evidence that the negligent driver was requested to produce his operator's license. It may also be observed that as soon as the affidavit of defense was filed, ordinary prudence should have dictated to plaintiff and his counsel the advisability of investigating the accuracy

of the information given relative to the alleged residence of the driver of the other car.

The only direct evidence submitted by plaintiff upon this branch of the case was that the driver of the car in question, whom he had never seen before or since the accident, *said* his name was Harry C. May, Jr., and stated he resided at '5861 Douglas Street, Pittsburgh, and that the car bore registration plates numbered "7-N-296."

Obviously, this evidence, standing alone, was not sufficient to take the case to the jury. To hold that it was, would be equivalent to saying that, no matter how false such a statement might be, any person, suffering personal injuries or damage to his car through the negligent operation of another car by the person making the statement, might properly summon the person whose name and address were used from any part of the State (Sec. 1208, Act of June 22, 1931, P. L. 751, 812) and put him to the annoyance and expense of defending an action of trespass. A positive denial in an affidavit of defense of any connection with the accident would not be sufficient; the person sued would be obliged to appear personally and assume the burden of refuting the truth of the statement, under penalty of having the case sent to a jury.

But as we understand the opinion of the court below, written by the trial judge in support of the denial of defendant's motion for judgment n. o. v., that tribunal justifies the submission of the case upon the additional circumstance that May did not appear personally at the trial to "disprove the statement made by plaintiff." The case of Brown v. Schock, 77 Pa. 471, is cited and relied upon by the court below.

We are not convinced that the case cited should control the disposition of the one now at bar. It is referred to in McHugh v. McHugh, 186 Pa. 197 (p. 201), as a somewhat extreme illustration of the application

of the doctrine that the failure of a party to an action to appear at the trial, when he has a strong motive to appear, may properly be considered as amounting to "evidence against him." Moreover, the controlling facts and surrounding circumstances of the Brown case differ materially from those here present. In that case, Brown, as the holder of a note given by Schock to Simpson for an admittedly worthless patent washing machine, brought suit against the maker. The defense was that the note had been procured through false representations made by Simpson to Schock and that Brown was a party to the fraud. Another man, whose name Schock did not know, was traveling with Simpson when the transaction occurred. Neighbors, upon whom a similar fraud was perpetrated, testified this other man stated his name was Brown and that he answered to and was known by that name. Both Simpson and Brown lived in New York. There was evidence that Brown's counsel had notified him of the trial and asked him to be present; the case was continued several times in order to procure his attendance; he declined to come because of other engagements and his counsel testified he had informed him that his presence was not necessary. There was a verdict for the defendant and the question involved upon the appeal was the admissibility of proof of many circumstances tending to identify Brown as Simpson's companion when the note was obtained. The Supreme Court, after stating that Brown *refused* to appear, continued: "If he had a strong motive to appear and would not, he leaves himself open to suspicion. The question is not upon his right to stay away, but upon the motive which may have caused his absence. A man of ordinary intelligence must know that his failing to appear when he had a strong motive to appear, would be evidence against him. ...... If he knew he was not the Brown who accompanied Simp-

son, the accomplice, his motive was very strong to appear, and by his presence convince the witnesses that he is not the same person called Brown, who accompanied Simpson.''

In applying this language to the present case, the court below held that May's failure to appear and his failure to answer the letter of plaintiff's counsel ''create an inference [strong enough to take the case to a jury] that he [May] purposely stayed out of court because he feared that if the truth were known it would not aid his contention.''

Here, however, it cannot be said May ''refused'' to appear. Plaintiff was not justified in assuming he would be present merely because suit had been brought against him: Grimsley v. Black, 54 Pa. Superior Ct. 413. May could have been subpoenaed, but Brown could not. Moreover, the evidence of the witnesses called in behalf of Schock and against Brown was materially stronger than that of the single witness against May.

In these modern days of various forms of automobile insurance policies, under many of which the insurer is required to assume the burden of defending actions based upon the alleged negligence of the insured, we are not prepared to say that the mere absence of a defendant from a trial brings a case of the nature of the one here involved within the doctrine relied upon by the court below. In our opinion, the present plaintiff was not entitled to go to the jury when he closed his case and could have been so informed by the trial judge. He could then have suffered a voluntary nonsuit and thereby secured an opportunity to make the investigations to which we have referred and which should have been made in preparing the case for trial.

We are satisfied the evidence adduced by plaintiff is not sufficient to support the judgment he has ob-

tained, but we are not convinced that the interests of justice would be fully served by directing that judgment be entered for the defendant. There is evidence upon the record that plaintiff moved to New York shortly after the accident. It seems quite clear that his case was not properly prepared; this may not have been his fault. The law furnishes ample means by which the truth, or falsity, of the statement made by the driver of the other car as to his identity may be investigated and determined; justice cannot be administered in this case until the material facts have been ascertained.

Defendant did not move for a new trial, but this court is authorized by Paragraph 8 of Section 8 of the Act of June 24, 1895, P. L. 212, 219, (17 PS §192), inter alia, to "affirm, reverse, amend or modify any order, judgment or decree as it may think to be just, or it may return the record for further proceedings in the court below." Cf. Taggart v. De Filippo et al., 315 Pa. 438, 173 A. 423.

We think the interests of justice will be best served in this case by directing that it be retried.

Judgment reversed with a venire.