## Flick et al. *v.* Shimer, Admrx., Appellant.

Argued November 25, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

482

*Edward J. Fox, Jr.,* of *Fox & Fox,* for appellant.

*Francis Johns Gafford,* with him *Calvin F. Smith,* for appellees.

OPINION BY MR. JUSTICE MAXEY, January 6, 1941:

Plaintiffs brought actions in trespass against the Administrator of the Estate of William K. Shimer, for damages resulting from the deaths of plaintiffs' husbands, Edward Flick and Robert Flick, respectively, due to the alleged negligent operation of an automobile by defendant's decedent, who was killed in the same accident.

On April 24, 1939, Shimer, the owner of a small Ford truck, offered to drive Edward Flick from his farm near Effort to Nazareth in order to get some furniture which Ralph Saeger had given to Flick. Shimer, Edward Flick, and the latter's brother, Robert, got into the only seat of the truck, and with Shimer driving set out for Nazareth, 24 miles away. After loading the furniture on the truck, they left Nazareth for the return trip at about 3:30 p. m. All three were found by the overturned truck at about 5 p. m. near Ross Common Manor, halfway between Nazareth and Effort. Edward Flick was to the right of the truck, Robert Flick was under the left side of the car nearest the steering wheel and Shimer was in front of the car. The latter was dead and the brothers were mortally wounded. The negligent operation of the truck is conceded. The vital question is: who was the operator?

The court below refused defendant's motion for a compulsory nonsuit. A jury returned a verdict for the widow of Edward Flick in the amount of $6,000, which was remitted to $5,000, and a verdict of $4,000 to the widow of Robert Flick, which was remitted to $3,000. Motions for judgment n. o. v. were denied and because of the remittiturs the motions for new trials were denied. These appeals followed.

Defendant assigns as error the refusal of the court below to grant (1) her motions for judgment n. o. v. based on the failure of plaintiffs to prove who operated the car involved in the accident, and (2) her motions for new trials based on excessive verdicts.

The evidence is that Mr. Shimer "was driving when they left" for Nazareth. Mrs. Saeger testified that the trio arrived at her home to pick up the living room suite which her husband had given to Edward Flick, at about "ten minutes to three," and that Robert Flick "couldn't" carry any furniture "because he had been hurt just in September." There is no evidence as to who was driving the truck when it left Nazareth.

Joseph Kline saw the truck as it was approaching Ross Common Manor and said that at the time it was "damp, chilly and misty with a fog rising from the ground." He saw the driver of the truck "cutting right across the road" near a bend in it. The witness "pulled his car off the road" and estimated the speed of the truck to be 60 miles per hour. After the car had passed him he "heard brakes squeaking and a bump" but on account of the curve he did not see the accident. He went to his home in Wind Gap and then returned to the scene of the accident and testified that the "ground was all plowed up. . . . Where they shot across the road, they smacked a telephone pole [on the righthand side going in the direction the truck was going] and knocked that off and knocked the big guy wire off, and then they shot up along the bank and plowed the one side of the road up there for I would say about twenty-five feet along this bank," and that the truck "was smashed up pretty well" and that the furniture "was not on the car."

Plaintiff, Emma Flick, testified that she had never seen her husband Edward drive an automobile within five years prior to the time of the accident. The other plaintiff, Clara Flick, testified that her husband Robert was injured in September, before the accident, that the injuries consisted of "a chest injury and an injury above

the eye," that he was confined in the hospital for about six weeks and after his release from the hospital he worked as a church janitor for about two months before returning to his brother's farm in Effort in February, where he remained until the date of the accident. A witness who knew both Edward Flick and Robert Flick testified that he had never seen either of them driving a car. The position the bodies of the car's occupants were in after the accident gave rise to no inference as to who was driving the truck.

Appellant maintains that there was not sufficient evidence in this case as to the identity of the driver of the truck to warrant submission of the case to the jury. With this we do not agree.

There *were* sufficient facts in this case to submit to the jury on the main issue which is whether or not William K. Shimer, the decedent, was driving the truck at the time of the accident. It was *his* truck and *he* knew how to drive it. There is no evidence that the other occupants had driven trucks or cars within recent years or possessed driver's licenses. Shimer was slightly younger than the younger of the two men who accompanied him. It was *he* who volunteered to go and get the furniture. He was at the wheel of the truck when it left on its mission. There is nothing to give rise to an inference that Shimer at any time during the journey relinquished the driving of his own truck to either of his elderly guests. Such things are not customarily done, especially on short journeys (as was this one). For Shimer to have turned his truck over to the driving of either of his inexperienced guests on this trip is something which one's reason does not accept as probable.

Wigmore on Evidence, 3rd ed., Vol. 9, sec. 2530, makes this statement: "It is often said that when a person, or object, or relation, or state of things is shown to have existed at a given time, its continuance is presumed. In reality, however, a genuine rule of presumption is seldom found; the rulings usually declare merely

that certain facts are admissible, or that they are sufficient evidence for the jury's finding." In section 437 he says: "When the existence of an object, condition, quality, or tendency at a given time is in issue, the prior existence of it is in human experience some indication of its probable persistence or continuance at a later period. . . . So far, then, as the interval of time is concerned, no fixed rule can be laid down; the nature of the thing and the circumstances of the particular case must control. . . . The opponent, on the principle of *Explanation* may always attempt to explain away the effect of the evidence by showing that in the meantime other circumstances have occurred to raise a probability of change instead of continuance." This court said in *Mars v. P. R. T. Co.,* 303 Pa. 80, 89, 154 A. 290, quoting Wigmore on Evidence, 2nd ed., Vol. 1, sec 27, page 232: "The conclusions and tests of every day experience, must constantly control the standards of legal logic."

Defendant also complains of the excessiveness of the verdicts. We think the court below in reducing the verdicts, as already herein stated, did all that justice required.

The judgments are affirmed.