**BASTIAN et al. v. BALTIMORE & O. R. CO.**
**Nos. 8382–8387.**

Circuit Court of Appeals, Third Circuit.
Reargued May 18, 1944.
Decided July 21, 1944.

---

Lee C. McCandless, of Butler, Pa., for appellants.

Sebastian C. Pugliese, of Pittsburgh, Pa. (Margiotti, Pugliese & Casey, of Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, GOODRICH, and McLAUGHLIN, Circuit Judges.

BIGGS, Circuit Judge.

The appeals in the cases at bar, which grow out of six actions sounding in trespass instituted by the personal representatives of decedents, present a puzzle in "presumptions".[1] Since the cases came into the District Court by reason of diversity of citizenship the substantive rights of the parties must be determined by the law of Pennsylvania. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

The pertinent facts are as follows. Bastian, Osche and Urich, three young men, were riding in an automobile owned by Osche on the concrete road leading from Mars to Callery in Pennsylvania. They were driving toward Callery. Mars is south of Callery. For some distance the road parallels railroad tracks constituting part of the double track line of the appellee. There is a dispute as to whether or not a train on the railroad right of way, four to five feet lower in elevation than the concrete road, could be seen from that road at any point near the crossing hereinafter referred to. There is evidence that weeds and brush growing between the road and the tracks obscured the view of persons on the road at the time of the accident. These were cut down immediately after the accident. At a point near Evans City the driver of the car made a right-hand turn from the concrete road onto a dirt road and drove down to and began to cross the railroad crossing. The distance from the first track which the automobile came to, the southbound track, and the paved road is about thirty feet. It is about eighteen feet from the east rail of the northbound track to the west rail of the southbound track. The forepart of the car had reached the more easterly rail of the northbound tracks when the car was struck by an express train coming from the direction of Mars. All three of the occupants of the car were killed.

A surveyor called by the plaintiffs testified that a man standing upon the track on which the train was running could be seen seven hundred and sixteen feet from a point twelve feet from the east side of the crossing. There was no direct evidence as to the speed of the train but it had started from a complete stop three-quarters of a mile to the south of the crossing and was brought to a stop at a point about a quarter of a mile north of the crossing. There was evidence that the three young men were familiar with the neighborhood and knew or should have known that the train would pass the crossing at about the time they approached it in the car. The accident occurred at about six-thirty on the evening of June 3, 1942. It was still daylight and the visibility was good. Several witnesses testified that no whistle was blown or bell was rung by the approaching train.

There was no direct evidence as to who

---

[1] In Commercial Molasses Corp. v. New York Tank Barge Corp., 314 U.S. 104, 111, 62 S.Ct. 156, 161, 86 L.Ed. 89, Mr. Chief Justice Stone referred to permissible inferences from evidence and stated that they were sometimes designated by "the equivocal term 'presumption'." He went on to state that a presumption might be considered "merely [as] a rational inference from the facts proven" requiring the party " * * * if he would avoid the inference, to go forward with evidence sufficient to persuade that the non-existence of the fact, which would otherwise be inferred, is as probable as its existence. It [the presumption or inference] does not cause the burden of proof to shift, * * *."

As was stated by Judge Lockwood in Seiler v. Whiting, 52 Ariz. 542, 548, 84 P.2d 452, 454, "In truth there is but one type of presumption in the strict legal meaning of the word, and that is merely a general rule of law that under some circumstances, in the absence of any evidence to the contrary, a jury is compelled to reach a certain conclusion of fact." See also Wigmore on evidence, 3rd Edition, Vol. IX, §§ 2491–2493.

We will make use of the terms "presumption" and "inference" in the cases at bar as if they were equivalents.

was driving the car. There was testimony that the car belonged to Nicholas J. Osche and this may be taken to be true since it is not denied by the defendant. There was no evidence as to whether or not Osche was the possessor of a driver's license, though there was evidence that he knew how to drive a car. Cf. Flick v. Shimer, 340 Pa. 481, 17 A.2d 332. Urich's sister testified that Bastian drove with Osche to work and in response to the question, "Who drove the car?" she replied "Nicholas [Osche]." There was no evidence as to who was driving the car when the three men left work nor was evidence presented as to whether Urich or Bastian had drivers' licenses or knew how to drive. Cf. Ohio Bell Tel. Co. v. Lung, 129 Ohio St. 505, 196 N.E. 371, and Morgan v. Peters, 148 Pa. Super. 88, 24 A.2d 644. There was testimony to the effect that immediately following the accident Urich was found dead in the back of the car.

One David H. Swope, a witness called by the plaintiffs, testified that he was walking down the railroad track toward Mars from Evans City and that when the car was between fifteen and twenty feet from the railroad it "stopped, looked and listened".[2] Swope also testified, "I seen them looking out and listening, and then I looked up the track and I seen the train and I started on."

The defendant produced the sheriff of Armstrong County who identified Swope as a man who was in jail in Armstrong County continuously from April until July of 1942. Although not part of the record in the instant cases it is stated in the defendant's brief and is not denied by the plaintiffs that the presiding judge remanded Swope to the custody of the United States Marshal and directed the United States Attorney to file a complaint against him charging him with perjury. He was subsequently tried upon this complaint and was convicted. It is also stated in the defendant's brief and conceded by the plaintiffs that Swope admitted that he had not told the truth on the witness stand. An examination of Swope's testimony of record in the cases and that of the sheriff indicates that Swope's testimony was perjured and that he was not entitled to belief. There was in fact no eyewitness to the accident.

The learned District Judge directed a verdict for the defendant. A motion for a new trial followed which the court denied. From the opinion [3] of the court below it appears that the trial judge concluded that the presumption existing under the Pennsylvania law, viz., that a person who loses his life in an accident has exercised due care, was obliterated by the fact that the plaintiffs themselves had called Swope to testify and therefore were bound by his evidence. He concluded in substance that the occupants of the car were negligent because Swope testified that they had stopped, looked and listened at a point about fifteen feet distant from the southbound track and could have seen the approaching train. The court stated, "Even though the court had presumed that Swope's story was false, which it had no right to do when defendant's motion [for a directed verdict] was made, and were now to ignore it, nevertheless the order for judgment was proper, as it was evident from the physical situation that the train was in sight when the automobile entered the tracks." The trial judge stated that the automobile was driven by Osche.

As we have indicated there is no direct testimony that Osche was driving the car at the time of the accident, but is there evidence from which the jury might have been entitled to infer that he was the driver? We think that there was. He knew how to drive a car. Ordinarily he did drive the car in which he rode to work. Cf. Flick v. Shimer, supra. Moreover, he was its owner. It is the law of many States that an owner is presumed to be in charge of and have control of his property, even if that property be a vehicle.[4] This presumption of course may be rebutted by evidence.[5]

---

[2] The witness personified the car and testified in fact that it, the car, stopped, looked and listened.

[3] Unreported.

[4] Mahan v. Walker, 97 N.J.L. 304, 117 A. 609; Judson v. Bee Hive Auto Service Co., 136 Or. 1, 294 P. 588, 297 P. 1050, 74 A.L.R. 944. See Annotation in 74 A.L.R. 915 and 42 A.L.R. 899.

[5] Pennsylvania creates a presumption of a different sort by a statute providing that, "In any proceeding for a violation of the provisions of this act [Vehicle Code] or any local ordinance, rule or regulation, the registration plate displayed on such vehicle shall be prima facie evidence that the owner of such vehicle was then operating the same. * * *" 1929, May 1, P.L. 905, art. XII, § 1209, 75 P.S.Pa. § 739. We think that this statute is suggestive of

The negligence of the driver of the car, whoever he may have been, is demonstrated by physical facts in the record which permit of no dispute. The rule known to the law of Pennsylvania as the "incontrovertible physical fact" rule, therefore, is applicable. The presumption that a person losing his life in an accident exercised due care enunciated by the Pennsylvania courts, has no application where incontrovertible physical evidence demonstrates the contrary. Frank v. Reading Co., 297 Pa. 233, 146 A. 598; Zotter v. Lehigh Valley R. Co., 280 Pa. 14, 21, 124 A. 284, 286; Kemmler v. Pennsylvania Co., 265 Pa. 212, 108 A. 592; Reigner v. Pennsylvania R. Co., 258 Pa. 257, 101 A. 995. The language employed by Mr. Justice Walling in Moses v. Northwestern Pennsylvania R. Co., 258 Pa. 537, 540, 102 A. 166, 167, is peculiarly apposite to the circumstances of the cases at bar [6] as is that used by the same Justice in Hazlett v. Director General of Railroads, 274 Pa. 433, 436, 118 A. 367, 368.[7] The driver of the car, therefore, whether the testimony of Swope be accepted or whether it be rejected, was guilty of contributory negligence since if he had stopped the car when it had come upon the southbound track and had looked to the south, he could not have failed to see the approaching train. See also Tull v. Baltimore & O. R. Co., 292 Pa. 458, 141 A. 263; Charles v. Lehigh Val. R. Co., 245 Pa. 496, 91 A. 890; Cubitt v. New York Cent. R. Co., 278 Pa. 366, 123 A. 308. While in Frank v. Reading Co., 297 Pa. 233, at page 240, 146 A. 598, at page 601, Mr. Justice Kephart stated that the application of the incontrovertible physical fact rule ordinarily " * * * should not be worked out through the trial judge, but rather left to the jury to determine * * *", he went on to say that under the circumstances of the cited case (very similar to those of the cases at bar) " * * * the driver must make his observations immediately on entering the first track and must continue to look; if he can see the approach of the train in time to avoid an accident, he will be chargeable with negligence if he does not do so." The representatives of the driver of the car, whether he was Bastian or whether he was Osche, are not entitled to recover.

The so-called incontrovertible physical fact doctrine, sometimes referred to as a rule of evidence, is in reality decisional law applied by the courts of Pennsylvania which affects the substantive rights of the parties. The doctrine consists of the application of the principle of contributory negligence upon facts so well and incontrovertibly established by the record that the trial court must direct a verdict for the defendant. We must therefore follow it. Erie R. Co. v. Tompkins, supra.

A very different situation is presented by the plaintiffs who are the personal representatives of the passengers. Since Urich was found dead on the back seat of the automobile there is evidence from which a jury might find that he was a passenger. The complaint alleges and there is evidence that the defendant was guilty of negligence because its train did not sound any warning as it approached the crossing and there was testimony to that effect. Since the trial court directed a verdict in favor of the defendant those inferences which most strongly favor the representatives of the passengers must be taken to be true. It must be presumed, therefore, that no warning was sounded by the train as it

---

what a Pennsylvania court might hold were it necessary to decide in a civil case who was the driver of a car and no fact other than ownership of the vehicle was presented.

The fact that Pennsylvania does not follow the prevailing rule in presuming that the driver of a motor vehicle whose identity is known is acting as the agent of the owner (See Axelrod v. Franklin, 109 Pa. Super. 300, 167 A. 239) is not incompatible with the presumption as to the identity of the driver. Cf. Furer v. May, 115 Pa. Super. 28, 174 A. 630, which involves questions of procedure and not the validity of such a presumption.

[6] Mr. Justice Walling stated, "The law presumes that one about to cross a railroad track performs his duty, but that presumption is rebutted where a man walks or drives upon the track and is immediately struck by a locomotive or car that was in full view when it became his duty to look."

[7] Mr. Justice Walling stated in the cited case, "Moreover, such presumption [of due care] is here rebutted by the fact that the deceased drove directly in front of the near-approaching train, which was in full view from the place where it was his duty to stop. It is vain to say that the traveler stopped, looked, and listened if, in spite of what his eyes and ears must have told him, he walked or drove right in front of an approaching train and was immediately struck."

approached the crossing and that the defendants' agents were negligent for this reason. The negligence of a driver of an automobile is not imputed by the law of Pennsylvania to his passenger. Indeed there is a presumption under that law that one riding in an automobile as a guest exercises due care for his own safety. Brown v. Reading Co. et al., 310 Pa. 516, 519, 165 A. 856, 857; Johnson v. Hetrick, 300 Pa. 225, 150 A. 477; Perry v. Ryback, 302 Pa. 559, 153 A. 770. It must, therefore, be assumed that the passengers exercised due care for their own safety while riding in the automobile unless that presumption is rebutted by evidence.

 Although the courts of Pennsylvania formerly held passengers to a high degree of care, the law is now in accord with the prevailing view as expressed by the Restatement of Torts § 495c. See Delling v. McKnight, 325 Pa. 251, 255, 188 A. 859, 861. Passengers are still required to warn the driver of danger of which they are cognizant, Davis v. American Ice Co., 285 Pa. 177, 131 A. 720, but this is not the situation when the driver is as fully aware of the dangers as are his passengers. See Jerko v. Buffalo, R. & P. R. Co., 275 Pa. 459, 462, 119 A. 543, 544, in which the court declared that "A passenger is not required to warn the driver of what the latter already knows * * *." The witnesses were in accord in testifying that the three decedents were familiar with the crossing and knew that the train was expected at about the time the accident occurred. In view of these circumstances a passenger (at least one who is not the owner of the car) should not be considered to be under a duty to warn the driver of an approaching train. A passenger under such circumstances should not be deemed to be guilty of contributory negligence.

The cases at bar are complicated by the fact that Osche was the owner of the automobile and we think that a jury would be entitled to infer, in the absence of evidence to the contrary, that the automobile was subject to his control at least to some degree at the time of the accident. As we have indicated there is a presumption that if Osche was a passenger he was exercising due care for his own safety. The inference may seem to conflict with the presumption but the resolution of such a conflict, if there be one, is for the jury.[8] In other words the effect to be given to the evidence of the ownership of the car by Osche and the inferences as to his control to be drawn therefrom are for the triers of the facts.

The court below erred in not permitting the jury to decide who was the driver of the car and who were the passengers as well as the inferences to be drawn in respect to Osche's control of the car because he was its owner. Since a new trial must be had it becomes unnecessary to determine the effect of Swope's testimony.

The cases at bar, in our opinion, are suitable for the employment of the provisions of Rule 49(b) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, authorizing a "General Verdict Accompanied by Answer to Interrogatories."

For the reasons heretofore stated the judgments of the court below are reversed and a new trial is ordered.

---

[8] See Wigmore, supra, § 2493, for a discussion of conflicting presumptions and of presumptions which seem to conflict.