## WILLIAMS v. WASHINGTON NAT. INS. CO.

### No. 16795.

Court of Appeal of Louisiana. Orleans.

Jan. 10, 1938.

Cabral & Graham, of New Orleans, for appellant.

George M. Brooks, of New Orleans, for appellee.

McCALEB, Judge.

On August 18, 1935, the plaintiff, Thomas Williams (colored), was shot in the leg by a member of the New Orleans police force. At the time of the accident, he was the named assured in a policy of accident insurance issued by the defendant company whereby the latter agreed to pay him $1 for each day he was disabled, for a period not exceeding 182 days. He has brought this suit against his insurer for the sum of $182 (the maximum amount of its liability on the policy) and, additionally, invoking the provisions of Act No. 310 of 1910, seeks the recovery of penalties and attorney fees.

The defendant insurance company admits the issuance of the policy and that it was in force at the time the injury was sustained, but it resists liability on the ground that plaintiff's disability was occasioned by his violation of law and that, consequently, there can be no recovery since the policy contains a provision to the effect that no disability benefits will be paid for injuries resulting from a breach of the law. It also contends that in no event should it be held liable for the penalties and attorney fees.

After hearing the case, the court below rendered judgment in favor of plaintiff in the sum of $182, plus a penalty in a like amount, and for attorney fees of $100; wherefore this appeal.

■ The sole and only point with respect to defendant's liability for plaintiff's injuries is one of fact; that is, whether the plaintiff was shot by the police officer as a result of his violation of the law, for it is well established that if the assured, in a policy such as this, is disabled while engaged in a breach of the criminal laws, which has causative connection, however slight, with the ensuing injury, there can be no recovery. See Harbor v. First National Life Ins. Co., La.App., 169 So. 106, and cases there cited.

■ At the trial below, the defendant produced three police officers, Albert Roux, Thomas Fogarty, and Edward Burns, all of whom gave their version of the events leading up to the arrest and the subsequent shooting of the plaintiff.

Officer Roux stated that, at about 3 o'clock on the morning of August 18, 1935, he, in company with officers Fogarty and Burns, was sitting in a police car which was parked on Erato street near Willow street; that he noticed a negro man (plaintiff) and woman walking on the other side of the street and that the plaintiff was cursing and abusing the woman in a loud voice and using obscene language. He says that he and Officer Fogarty immediately got out of the automobile and went over to the plaintiff with a view of placing the latter under arrest and charging him with disturbing the peace, but that when they attempted to do so, the negro resisted and struck him, causing him to fall to the ground. He further asserts that the negro broke away and ran toward Willow street; that he pursued him to the middle of the block of Derbigny street, where he overtook him in an alleyway and ordered him to halt, and that, upon the latter's failure to obey his command, he shot him in the leg.

Officer Fogarty corroborates the statement of Roux in certain particulars, but he contradicts the latter in many others. For instance, he testifies that, at the time the two negroes were walking on Erato street, he was not in the police car, whereas Roux states that all of the officers were in the parked automobile. Again, Fogarty says that, when he noticed the plaintiff and the woman and heard the plaintiff cursing and abusing her, he shouted to plaintiff to "stop that cursing boy. Shut up and go home and behave yourself," whereas Roux does not so testify. Fogarty says that when he told the plaintiff to shut up, the negro gave him some "fancy talk"; that he went over and grabbed him

and that when he took hold of the plaintiff, the latter exclaimed, "Oh, I didn't know you were a police officer." He states that he was by himself when the plaintiff was first arrested; that Officer Roux subsequently got out of the police car to assist in the arrest and that it was then that the negro struck Roux and knocked him down. He further says that, as soon as the negro struck Roux and resisted the arrest, he hit him with a billy. With respect to this, he testifies as follows: "* * * I worked on him with the billy; I smacked him in the jaw with it, or on the head, and knocked him against the side of the car; and by that time Roux had got out and we started placing him (the negro) in the car."

Fogarty further relates that it was while they were attempting to place the negro in the police car that the latter extricated himself and escaped.

Officer Burns supports the testimony of Roux and Fogarty to the effect that the plaintiff had been cursing and using obscene language.

On the other hand, the plaintiff's story of the occurrence is as follows: On the night of the accident, he had been playing cards at the house of a friend. Later, on his way home, he met Rachel Smith and volunteered to accompany her to her house. When they arrived on Erato street, he noticed an automobile parked without lights near the corner of Willow street. He says that as he and Rachel passed by the automobile some one in the car shouted: "Where you niggers going this time of the morning?" He maintains that he did not know who it was talking to him and, being under the impression that the occupants of the car were negro men, he yelled back, "Who wants to know?" that as soon as he had spoken, the officers in the car jumped out and sacked him against the fence of the abutting property; that when the officers grabbed hold of him, he said, "I beg you all's pardon. I didn't know you all was officers. Please don't do me anything." He further asserts that, notwithstanding his apology, the police officers searched him and when they could not find anything on him (except a cigar and a key), they proceeded to beat him on his head and face with a billy; that the attack upon him was violent, and, fearing for his life, he broke away from his captors, ran into an alley on Derbigny street where he hid until he was found by Officer Roux. He charges that Roux fired upon him without warning, and that he made no move which would have warranted the officer in believing that he intended to do bodily harm to any one. He denies that he was cursing Rachel Smith or disturbing the peace at the time he was accosted by the officers, or that he struck Officer Roux, and states that he and Rachel were good friends and that he was merely accompanying her to her home in an orderly manner.

Plaintiff's testimony is corroborated by the evidence of Rachel Smith with respect to the fact that he was at no time using obscene language or cursing her, or generally disturbing the peace. She also supports his statement in regard to the assault and battery by the police officers.

The judge of the lower court, who saw and heard the witnesses, was apparently impressed with the truthfulness of plaintiff's statement and that of his witness, Rachel Smith. It is also obvious that he did not believe the story told by the three police officers. He accordingly held that the injuries plaintiff received in the affray did not result from his violation of law. After careful examination of all of the testimony in the case, we are not only unable to discern manifest error in the conclusion of our brother below on this question of fact, but are convinced that it was eminently correct.

The evidence is likewise sufficient to sustain the view that Williams was disabled for a period of 182 days, and therefore he is entitled to the maximum benefits provided for in the policy.

Finally, we consider whether the trial judge was correct in condemning the defendant to pay the plaintiff the penalties and attorney fees provided for by Act No. 310 of 1910. The pertinent portion of that act reads: "Payment by such companies to the assured shall not be delayed for a longer period than thirty days from due notice and proof of disability, *without just and reasonable grounds such as to put a reasonable and prudent business man on his guard.*" (Italics ours.) Section 2.

The police report, upon which the defendant based its conclusions respecting its liability to plaintiff, shows that the plaintiff, at the time he was shot, was disturbing the peace, had assaulted a police officer, and had resisted arrest. It afforded to the defendant a just and reasonable ground upon which to resist liability. The

only way in which the truthfulness of the statements contained in the report could be determined was by a trial of the case. Act No. 310 of 1910, being a penal statute, will be strictly construed, and the penalties (including attorney fees) therein provided for will not be assessed unless it appears that the failure of the insurance company to accede to the demand was arbitrary and capricious.

For the reasons assigned, the judgment appealed from is amended by reducing the amount of the award in favor of the plaintiff to the sum of $182, and by the disallowance of plaintiff's attorney fees, and, as thus amended, it is affirmed. Defendant to pay all costs.

Amended and affirmed.