225 So.2d 687 (1969)
Joseph Russell BOUDREAUX et al., Plaintiffs-Appellees,
v.
FIRST NATIONAL LIFE INSURANCE COMPANY, Defendant-Appellant.
No. 2799.
Court of Appeal of Louisiana, Third Circuit.
August 7, 1969.
*688 Normann & Normann, by Thomas Guilbeau, New Orleans, for defendant-appellant.
Andrew Vidrine, Church Point, and Duro Duplechin, Eunice, for plaintiffs-appellees.
Before TATE, FRUGE and MILLER, JJ.
MILLER, Judge.
The trial court awarded accidental death benefits plus penalty interest on three accidental death insurance policies (two of which are also life insurance policies) issued by appellant on the life of plaintiffs' son. It was admitted that plaintiffs' son was fatally injured in a one car accident while all policies were in full force and effect.
Defendant appealed contending the trial court erred in failing to find that the insured was "violating the law at the time of his death."[1] Alternatively, appellant contends that the trial court erred in awarding penalty interest contending the refusal to pay was not arbitrary and capricious. Finally appellant contends it is entitled to credit for certain monies deposited with the District Court.
There is no dispute on the facts. Decedent, 19 years of age, was alone in his vehicle at about 1:15 a. m., September 16, 1967 when the unwitnessed accident took his life. On the day before, decedent had worked a full day as a roustabout for Freeport Sulphur Company at their plant near the mouth of the Mississippi River. That afternoon, decedent rode as a passenger on the 220 mile trip back to decedent's Church Point home. During that time decedent rested and took a two hour nap. While coming through Opelousas, the three occupants of the car picked up one beer *689 each, and each consumed that beer on the way to Church Point.
Decedent arrived home at 10:00 p. m. and remained there approximately one hour during which time he shaved, took a bath, drank one beer and ate supper. At about 11:00 p. m. decedent left to visit his girl friend in Louisburg, a few miles away. Decedent did not get to see his girl friend but went to her father's bar arriving there about 11:15 p. m. He stayed at this bar until shortly after 1:00 a. m. during which time he consumed two coke highballs and about one-half of a small bottle of Schlitz beer. The girl friend's father, Mr. Wilmer Guidry, was called as a witness for defendant.
The trial court ably summarized the testimony: "Upon leaving, he (decedent) told Mr. Guidry that he was going home. Mr. Guidry testified very positively during the time that decedent was there that he acted completely normal, was proper in every way, was not intoxicated and that during the time of his stay there, they discussed certain things including plans that he had, his job, and other subjects of mutual interest. It was shortly after that, that decedent was involved in the single vehicle non-collision accident which took his life. The state trooper, Harris Dupre, who investigated the accident shortly after its occurrence, testified that there was a stale odor of alcohol in the car, that there were no broken bottles, glasses or cans, or anything similar in the car. The trooper failed to detect any alcohol odor on decedent's body when he checked it.
"In view of this evidence, the defendant has failed to show that the decedent, at the time of the accident, was under the influence of intoxicating beverages. At best, the defendant showed that the decedent had had two and one-half bottles of beer and two coke high-balls over an extended period of time prior to the accident."
To this we would add that there is nothing in the record to suggest that this drinking over the period of time and before and after eating a meal is sufficient to find that decedent insured was "under the influence of intoxicating beverages." See Brown v. Collins, 223 So.2d 453 (La.App. 3rd Cir. 1969), where blood alcohol test showed .255 milligram percent of alcohol in the blood, but since this was not interpreted by expert medical testimony, we could not consider this as evidence that decedent was "under the influence of intoxicating beverages."
In support of appellant's position that deceased insured was killed "while in violation of the law", it is contended that the accident resulted from decedent's driving in the wrong traffic lane, while speeding and while recklessly operating a motor vehicle.
The evidence concerning the manner in which the accident occurred was submitted by defendant and consisted solely of the testimony of the investigating state trooper. The accident occurred about six miles south of Lawtell on La. 35. Decedent had been driving south and had just completed a gradual turn to the right on a blacktop road which was covered with quite a bit of loose pea gravel. The vehicle left skid marks starting in the northbound lane and traveling 84 feet into the southbound lane where his vehicle struck an embankment in the west ditch. The vehicle continued in this ditch a distance of 42 feet where decedent's body was found and then proceeded across La. 35 and came to rest in an upright position facing north but in the east ditch 69 feet from the point where the body was found.
From these facts, appellant reasons that the insured was killed "while in violation of the law". Appellant bears the burden of proof to show a violation of the law and that there is some causative connection between the violation and the ensuing injury or death. Williams v. Washington National Insurance Co., 177 So. 890 (La.App.Orl.1938); Harbor v. First National Life Insurance Co., 169 So. 106 (La.App.Orl.1936); Geddes & Moss Undertaking *690 & Embalming Co. v. First National Life Insurance Co., 167 So. 881 (La.App.Orl.1936).
We find the case of Larkin v. State Farm Mutual Automobile Ins. Co., 233 La. 544, 97 So.2d 389 (1957) remarkably similar to the instant case. There the unwitnessed accident was reconstructed from tire tracks found at the scene of the accident. The vehicle had been traveling towards New Orleans and ran off the then two lane highway onto the right hand shoulder. It traveled along that shoulder for a distance of 118 feet, with all wheels off the highway, then regained the highway and flipped over into the canal on the opposite side of the highway. The trial court and the Court of Appeal (91 So.2d 94La.App. 1st Cir. 1956) found that "The tracks establish the probability of negligence, and this is all that the law requires in order to conclude that the plaintiff has made out his case. * * * The tracks plus our common sense tell the whole story. * * *"
However, on certiorari, the Louisiana Supreme Court reversed, observed inter alia as follows: "* * * there is nothing to show what caused his car to leave the pavement; it may have been forced off the narrow highway by oncoming traffic, or by a skidding motorist alongside, and the fact of his having driven onto the adjoining shoulder does not of itself warrant an inference of negligence since it does not exclude other reasonable hypotheses consisting with proper driving on Swilley's part. It occurs to us that the very fact that all four wheels of the car were off the highway is a circumstance from which it would be fair to infer that a car approaching in Swilley's lane of traffic forced him completely off the pavement as an alternative to a collision. Nor can we agree with our learned brothers of the Court of Appeal, who thought that the most plausible explanation of the car having traveled 118 feet on the shoulder then swerved diagonally across the road, was that the driver was going too fast or that he did not have his car under proper control. The record contains nothing to indicate the speed of the car, but a distance of 118 feet on the shoulder is not inconsistent with prudent driving * * *. No causal connection between the accident and some phase of negligent operation of the car has been shown, and it is our opinion that when all the facts are considered, this case is not one in which the doctrine of res ipsa loquitur is applicable." Larkin, 97 So.2d 389, 392, 393.
There is nothing in the record to indicate what caused decedent's car to leave the highway. His vehicle may have been out of control at the time he applied his brakes. Likewise, he may have been attempting to avoid oncoming traffic, or a pedestrian, or some animal which unexpectedly darted into his path. Again, it could have been some mechanical trouble or a blowout. We agree with the trial court. Defendant has failed to carry the burden of proof to show that decedent was in violation of law at the time of his death.
The trial court allowed 6% per annum interest from November 20, 1967 on the amounts due on all three policies as authorized by LSA-R.S. 22:656 and 657, subd. B. These statutes require the insurer to pay death claims within sixty days from the date of receipt of due proof of death and should the insurer fail to do so without just cause, then the amount due shall bear interest at the rate of six per cent per annum from date of receipt of due proof of death by the insurer until paid.
Appellant contends that its refusal to pay was not "without just cause" because it was relying on the state trooper's accident report that the decedent was "in violation of law" at the time of his death. Lafield v. New York Life Ins. Co., 9 So.2d 248 (La.App. 2nd Cir. 1942); Williams v. Washington National Ins. Co., 177 So. 809 (La.App.Orl.1938). We distinguish Lafield in that there the insurance company immediately paid the life insurance benefits, *691 and refused to pay the accidental death benefits. Here, the insurance company refused to pay the $1500 admittedly owed under the life insurance policies, until it filed answer to the suit on August 26, 1968. At that time the life insurance benefits were not unqualifiedly paid to the beneficiaries. Furthermore, in Lafield, the trial court held that the refusal to pay accidental death benefits was not "without just cause." Here the trial court held that the refusal to pay all benefits was without just cause. We distinguish Williams in that there the court was concerned with a disability policy rather than life insurance and accidental death policies. We acknowledge that the holding in Williams might justify the insurer in refusing to pay accidental death policy benefits based on a police report.
In the instant case, defendant has no defense for its refusal to pay $1,500 in life insurance benefits. Considering its arbitrary refusal to pay these benefits, and the holding of Larkin, supra, we cannot find manifest error in the trial court's conclusion that defendant's denial of plaintiffs' entire claim was without just cause. Morein v. American Physicians Insurance Company, 192 So.2d 887 (La.App. 3rd Cir. 1966).
Should defendant receive credit for the $1,500 in checks issued by defendant on August 23, 1968 and placed in the suit record on August 26, 1968?[2] We think not. Both checks show that they are in full payment of the death claim under the policies. Since both policies were double indemnity policies, and the checks paid only the life insurance benefits, the checks could not be cashed by the beneficiaries without raising a question as to the loss of their right to claim accidental death benefits. To this day, plaintiffs have not received any benefits due them under the insurance policies.
For these reasons, the trial court's judgment is affirmed. The costs of this appeal are assessed to defendant-appellant.
Affirmed.
NOTES
[1] Two of the policies contain the following clauses:

"This Accidental Death Benefit does not cover * * * death during the period of time the insured is committing a felonious act or misdemeanor in violation of criminal law * * * or death while the Insured is under the influence of intoxicating liquors, beverages or narcotics, or death resulting from the use of intoxicating liquors, beverages or narcotics."
The third policy provides:
"This policy does not cover death or injury to the insured * * * while fighting, resisting arrest or violating the law; while the insured is under the influence of intoxicating beverages * * *."
[2] Defendant should stop payment on these checks.