274 So.2d 911 (1973)
Clara TINGSTROM, wife of/and Sidney Ehrhard, Sr., et al.
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al.
No. 9235.
Court of Appeal of Louisiana, First Circuit.
February 28, 1973.
Rehearing Denied April 9, 1973.
*912 C. Gordon Johnson, Jr., New Orleans, for appellants.
Martin A. Welp, New Orleans, for appellees.
Before SARTAIN, BLANCHE and WATSON, JJ.
BLANCHE, Judge.
This suit is occasioned by a one-car accident which resulted in the death of Frank J. Ehrhard, son of plaintiffs, Sidney Ehrhard, Sr., and Clara Tingstrom Ehrhard. Made defendants are Melvin E. LeBlanc, Sr., and State Farm Mutual Automobile Insurance Company, which company had issued separate liability insurance policies to Melvin LeBlanc, Sr., and to his son, Melvin LeBlanc, Jr., the alleged driver of the automobile who was also killed. Plaintiffs allege that on November 12, 1969, their son, Frank J. Ehrhard, was a passenger in a 1967 Dodge owned by Melvin *913 E. LeBlanc, Sr., and driven by Melvin LeBlanc, Jr. This vehicle was proceeding in a northerly direction on U. S. Highway 61 near Prairieville, Louisiana, in Ascension Parish, when it left the highway, overturning end to end and then side to side several times, causing the damages sued on.
Prior to the commencement of trial, the sustaining of an exception of no right or cause of action by the trial court dismissed the suit of plaintiffs, Claire Ehrhard Guthrie and Sidney Ehrhard, Jr., sister and brother, respectively, of Frank J. Ehrhard. Under LSA-C.C. art. 2315 a claim for wrongful death is vested solely in the surviving mother and father of the deceased when the deceased is not survived by either wife or child.
After a trial on the merits, the trial court rendered judgment for plaintiff, Clara Tingstrom Ehrhard, against defendant, State Farm, in the sum of $5,000; in favor of plaintiff, Sidney Ehrhard, Sr., against defendant, State Farm, in the sum of $6,000; and dismissed all other claims. Subsequently, an amended judgment reduced the award to plaintiff, Sidney Ehrhard, Sr., to $5,500, said judgment remaining the same in all other respects. From this amended judgment defendant, State Farm, has appealed. We affirm.
On appeal defendant maintains in its specifications of error that the trial court erred (1) in finding that Melvin LeBlanc, Jr., was driving the car at the time of the accident; (2) in finding that the accident occurred solely due to the negligence of Melvin LeBlanc, Jr.; and (3) alternatively, in finding that recovery should be allowed under both policies of insurance.

PROOF AS TO DRIVER
Both occupants of the vehicle were found outside of the automobile. LeBlanc, Jr., was described as the smaller of the two and was found in a kneeling position near the windshield. Ehrhard was found some 75 to 80 feet away. Defendant argues that under these circumstances there is no proof concerning who was driving the car at the time of the accident. Earlier in the evening LeBlanc, Jr., had borrowed his father's car for the purpose of meeting Ehrhard. While no Louisiana authority is directly in point, we are of the opinion that the ownership of the automobile in LeBlanc, Sr., the fact of his lending the automobile to his son, and the fact that LeBlanc, Jr., was last seen driving the automobile when he left his home to meet his friend Ehrhard affords a rebuttable presumption that he was the driver of the automobile at the time of the accident. If unrebutted, such circumstances establish by a preponderance of the evidence that LeBlanc, Jr., was driving the automobile at the time of the accident because this evidence, if taken as a whole, shows that it is more probable than not that LeBlanc, Jr., was driving.
In Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971), the Louisiana Supreme Court summarized several judicial formulations on the burden of proof and concluded by stating:
"* * * Whatever the descriptive term used, however, proof by direct or circumstantial evidence is sufficient to constitute a preponderance, when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not." (Jordan v. Travelers Insurance Company, 245 So.2d 151, 155)
Other jurisdictions have recognized the sufficiency of proof in the absence of direct testimony by survivors or eye witnesses concerning who, among the occupants of a motor vehicle, was driving at the time of the accident. This is the subject of an annotation in 32 A.L.R.2d 992 where it is noted:
"That one who was shown to be driving an automobile shortly prior to an accident is presumed to have continued as driver was recognized in Flick v. Shimer (1941) 340 Pa. 481, 17 A.2d 332, and Morgan v. Peters (1942) 148 Pa. *914 Super. 88, 24 A.2d 644, both set out in Sec. 2, supra, and given effect not only in those cases but in Claussen v. Johnson's Estate (1938) 224 Iowa 990, 278 N.W. 297; Ohio Bell Tel. Co. v. Lung (1935) 129 Ohio St. 505, 196 N. E. 371; Renner v. Pennsylvania R. Co. (1951, App.) 61 Ohio L.Abs. 298, 103 N. E.2d 832; and Huestis v. Lapham's Estate (1943) 113 Vt. 191, 32 A.2d 115."

NEGLIGENCE OF DRIVER
Ehrhard and LeBlanc, Jr., were close personal friends. Earlier in the evening Ehrhard was visiting in the LeBlanc home in Gretna, Louisiana. He left the LeBlancs about 8:45 P.M., purportedly to go bowling in New Orleans. Subsequently, LeBlanc, Jr., left his home at approximately 10:45 P.M. in his father's car and with his father's permission and consent, purportedly to meet Ehrhard. Approximately five hours later, at about 3:15 A.M., in the vicinity of Baton Rouge, Louisiana, both were killed in an accident on U. S. Highway 61. There was one eye witness to the accident, Mr. Vincent J. D'Antoni. He testified that he was proceeding in the opposite direction and was 500 to 600 feet away when he observed that as the LeBlanc automobile approached a curve it left the road and turned end over end twice and rolled over from side to side four or five times.
The trial judge concluded that in the absence of any other reason for the failure of the LeBlanc vehicle to negotiate the curve the accident was caused by excessive speed and failure to keep a proper lookout. On the other hand, the defendant argues that it is not known why the LeBlanc vehicle left the highway and perhaps the driver of the car had a heart attack or perhaps there was some mechanical malfunction or "perhaps, perhaps, perhaps."
We have noted such cases as Larkin v. State Farm Mutual Insurance Company, 233 La. 544, 97 So.2d 389 (1957), and Boudreaux v. First National Life Insurance Company, 225 So.2d 687 (La.App. 3rd Cir. 1969), involving unwitnessed accidents where an attempt was made to invoke the doctrine of res ipsa loquitur. In those cases the Court refused to invoke the doctrine, holding that the facts did not warrant an inference of negligence since they did not exclude other reasonable hypotheses consistent with proper driving.
We would apply the doctrine of res ipsa loquitur in the case before us. The fact that the accidents in the Larkin and Boudreaux cases, cited supra, were unwitnessed and the accident in the instant case was witnessed is a significant distinction. Where there is no witness, unlimited speculation may be indulged in as to the cause of the accident other than the negligence of the driver. However, it is a different case when a witness observes that an automobile in the early morning hour of approximately 3:15 A.M. traveling on a straight stretch of road for approximately one mile without incident, for no apparent reason, then fails to negotiate a curve and turns over in the manner described. In such case the circumstances surrounding the accident suggest the negligence of the driver in traveling at an excessive rate of speed and in failing to keep a proper lookout rather than some other factors as the most plausible explanation of the accident. The factors suggested by the defendant such as a heart attack, mechanical failure, and an obstruction in the roadway are mere conjecture. If the defendant had come forward with some evidence in support thereof, of course, such evidence would have destroyed the inference of negligence created by the foregoing circumstances.
In Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972), Justice Tate stated the following in regard to the doctrine of res ipsa loquitur:
"* * * [W]e have in our most recent decision on the issue noted that the real test of applying res ipsa loquitur to be as follows: `Do the facts of the controversy *915 suggest negligence of the defendant, rather than some other factors, as the most plausible explanation of the accident?' Pilie v. National Food Stores, 245 La. 276, 158 So.2d 162, 165 (1963). (Italics ours.) On the other hand, application of the principle is defeated if `an inference that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as one that it was due to his negligence.' 158 So.2d 165 (Italics ours.) See also Comment, 25 La.L.Rev. 748, 764 (1965). This is simply another formulation of the burden of a plaintiff in a tort action to prove that, more probably than not, his injury was caused by the negligence of the defendant." (Boudreaux v. American Insurance Company, 264 So.2d 621, 636)
Accordingly, we are of the opinion that plaintiffs have, in fact, proved by a preponderance of the evidence that the most plausible explanation of the accident was the negligence of the driver LeBlanc, Jr.

INSURANCE COVERAGE
On the question of insurance coverage, the LeBlanc, Jr., vehicle was insured by State Farm policy No. 850-589-A11-18 and the LeBlanc, Sr., vehicle was insured by State Farm policy No. 850-589-A11-18A. Both policies provided for coverage with limits of $5,000 bodily injury liability for each person and medical payments, including funeral expenses, of $500 for each person. State Farm admits coverage under the LeBlanc, Sr., policy but contends that the LeBlanc, Jr., policy contains an exclusionary provision which precludes coverage. The trial judge, in an excellent opinion, set forth the contentions of the parties concerning the question of coverage and correctly disposed of this issue. We quote with approval from his opinion:
"* * * Counsel for State Farm admits coverage under the LeBlanc, Sr., policy, but relies upon an exclusion in the LeBlanc, Jr., policy and argues as follows:
`The vehicle in question would be considered a non-owned automobile under the LeBlanc, Jr., policy and there would be coverage except for the fact that non-owned automobile is defined as "non-owned automobile means an automobile or trailer not owned or furnished for the regular use of either the named insured or any relative..." Relative is defined as "relative means the relative of the named insured who is a resident of the same household; ..." We therefore must determine as to whether or not Mr. LeBlanc, Sr.'s car would be considered a non-owned vehicle under LeBlanc, Jr. policy. Certainly, Melvin LeBlanc, Jr. is a relative of Melvin LeBlanc, Sr. and therefore the question arises as to whether he was a member of the same household.
`The law of Louisiana is that the residence of an unemancipated minor is with his father unless changed by law. Taylor v. State Farm Mutual Automobile Insurance Co., 248 La. 246, 178 So. 238 (1965); Detroit Automobile Inter. Ins. Exchange v. Feys, 205 F. Supp. 42 ([D.C.] 1972). The residence of Melvin LeBlanc, Jr. had never been changed by law. He came home every chance he had and was in the military only on a temporary basis.'
"On the other hand the plaintiffs contend that recovery should be allowed under both policies arguing as follows:
`By testimony of Melvin E. LeBlanc, Sr., it was shown that although his son's legal domicile was the same as his father's, his residence had changed because of the admitted fact that he was on active duty as a member of the U. S. Navy and stationed in another state. He had completed one and one-half (1½) years of a three (3) year enlistment and was and had been stationed *916 in Atlanta, Georgia for more than six (6) months prior to the accident.
`Reference to the reported cases will show that this "drive other cars" exclusion does not apply in this case. In Andrew L. Leteff v. Maryland Casualty Co., et al., [La.App.] 91 So.2d 123, there is an excellent summary of jurisprudence on this point of law.
`First, it is pointed out that the intention of the Company was to protect itself from a situation where an insured could pay for one policy and be covered by the insurance in driving any car that he decided to use, whether owned by him or members of his family. In other words, cars under his control that he could use at will and might use often. Without some such exclusion, it is obvious that the Company might lose premiums and also that the hazard under the insurance would be increased.
`Clearly we do not have such a situation now before the Court. In this instance we have two (2) policies issued by the same company. They collected two premiums and issued two policies. The testimony shows that the father's car was not furnished for the regular use of the son; that is geographically impossible.
`Additionally, defendant's policy defines a non-owned automobile as one not owned by the named insured or a relative and defines relative as a resident of the same household. In Oglesby v. Turner [127 La. 1093], 50 [54] So. 400, the Supreme Court of Louisiana distinguished residence and domicile and that distinction still applies. Admittedly, an unemancipated minor's domicile, is legally the same as his father's, but although as a matter of law, you can have only one domicile, as a matter of fact and law, you can have several residences. William E. Stavis v. Henry J. Engler, Jr., et al. [La.App.], 202 So.2d 672, Evelyn C. Vehrs, et al. v. Jefferson Insurance Co., et al. [La.App.], 168 So.2d 873. If State Farm intended to rely on the legal definition of domicile, then they should have used the word "domicile" and not the word "residence."'
"The court is of the opinion that plaintiffs are entitled to recover under both policies. There were two separate policies issued on two separate cars and two separate premiums collected. Although Melvin's legal domicile as a matter of law remained with his parents, his residence had clearly changed to Atlanta, Georgia, and was plainly under the control of the military authorities. The policy limits the term `relative' to a `relative of the named insured who is a resident of the same household.' There is no mention of the legal concept of domicile. It is fundamental that exclusionary clauses in policies of insurance are to be strictly construed and that any doubt or ambiguity is to be resolved against the insurer who drafted the policy. If State Farm intended that the legal concept of domicile govern its liability under the policy it should have so stated rather than utilizing the ordinary terminology of residence." (Written Reasons for Judgment, Record, pp. 20, 21, 22)
Accordingly, the judgment of the trial court is affirmed, at the cost of defendant-appellant.
Affirmed.