DUFRESNE, Judge.
These consolidated matters arise out of a one-car accident in which a teen-age boy and girl were tragically killed. The accident occurred at about 3:26 A.M. on Easter morning in 1984, near the intersection of Transcontinental Drive and Veterans Boulevard in Jefferson Parish. Witnesses stated that they saw the car, a 1983 Chevrolet Camaro Z-28, traveling at a high rate of speed on Transcontinental. When it crossed Veterans, it appeared to become air-borne, then “bottomed out” leaving gash marks in the road where the bottom of the car scraped the ground. After crossing Veterans, the car went out of control to the right, struck the concrete base of a light stanchion with the right front hood and fender, and flipped over, coming to rest upside down. Eighteen year old Joann Giorlando was killed instantly, and seventeen year old Patrick Coon died several hours later without regaining consciousness.
In two separate suits, consolidated for trial, the parents of each teen-ager sued the parents of the other and their respective insurers, each alleging that the child of the other parents was driving at the time of the accident. After a five day trial, the jury found, eleven to one, that Joann was in fact driving, and awarded Patrick’s parents $100,000 in damages. This appeal followed.
The events preceding the accident are not in dispute. Patrick Coon had moved out of his parents’ home a few months before, and was living with Ivan Calíais, a somewhat older acquaintance, who owned the Camaro. The Giorlandos were neighbors of Calíais, and Joann was still living at home. Patrick apparently met Joann through Calíais, and the two youngsters began dating. Between eight and nine o’clock on the night in question, Calíais, Patrick, Joann, and Steven Schramm, another friend, went out in Calíais’ Camaro. After bowling for an hour or two, the party returned to Joann’s house, where she changed clothes to go to a night club. The group remained at the club for perhaps an hour, and returned to Calíais’ house. Cal-íais testified that he was tired and so told Patrick to take the Camaro and bring Schramm home. He also stated that he told Joann in a joking way that if Patrick “got out of hand” she was to drive the car. Schramm stated that his house was a ten to twenty minute drive from Calíais’ house, and that he was dropped off at about 2 A.M. When Patrick and Joann left him, Patrick was still driving. Nothing is known about what the teenagers did between that time and 3:26 A.M. when the accident occurred.
By the time of trial it was apparent to all parties that the identity of the driver was the only serious factual issue to be resolved. Because the jury found that Joann was more probably than not the driver, we *1342 address first the alleged errors bearing directly on this finding.
The Giorlandos and their insurer, the Northern Assurance Co. of America, appellants here, allege first that an improper jury instruction as to the level of proof necessary to sustain a finding that Joann was the driver led the jury into error in determining that she was the driver. Specifically, they assert that the last known driver of a car is “presumed” to have been the driver at the time of an accident when the actual driver cannot readily be ascertained. They further argue that this “presumption” can only be overcome by “clear and convincing” evidence to the contrary, which they contend was not forthcoming in this case, and that the trial court erred in not giving an instruction as to the burden of “clear and convincing” evidence. While we agree that a presumption exists, we disagree that in this case it could only be overcome by clear and convincing evidence.
Appellants first rely on Ehrhard v. State Farm Mutual Automobile Ins. Co., 274 So.2d 911 (La.App. 1st Cir.1973), for the proposition that the last known driver is presumed to be the driver at the time of an accident when the actual driver cannot otherwise be ascertained. The pertinent language in that case is as follows:
“Both occupants of the vehicle were found outside the automobile. LeBlanc, Jr. was described as the smaller of the two and was found in a kneeling position near the windshield. Ehrhard was found some 75-80 feet away. Defendant argues that under these circumstances there is no proof concerning who was driving the car at the time of the accident. Earlier in the evening LeBlanc, Jr. had borrowed his father’s car for the purpose of meeting Ehrhard. While no Louisiana authority is directly in point, we are of the opinion that the ownership of the automobile in LeBlanc, Sr., the fact of his lending the automobile to his son, and the fact that LeBlanc, Jr. was last seen driving the automobile when he left his home to meet his friend Ehrhard affords a rebuttable presumption that he was the driver of the automobile at the time of the accident. If unrebutted, such circumstances establish by a preponderance of the evidence that LeBlanc, Jr. was driving the automobile at the time of the accident, because this evidence, if taken as a whole, shows that it is more probable than not that LeBlanc, Jr. was driving.” (at 913)
Appellants next cite State v. Traylor, 467 So.2d 875 (La.App. 2nd Cir.1985), and Taylor v. Dupree, 484 So.2d 986 (La. App. 3rd Cir., 1986), for the rule that presumptions can only be overcome by clear and convincing evidence. In this court’s opinion, appellants’ reliance on these latter cases is misplaced. In State v. Traylor, the clear and convincing standard for a criminal forfeiture was mandated by statute (La.R.S. 32:1550). In Taylor v. Dupree, the clear and convincing standard was applied for strong reasons of policy involving the presumption that an employee is in the course and scope of his employment, thus creating the legal conclusion of agency. See Succession of Lyons, 452 So. 2d 1161 (La.1984).
In the instant matter, there are neither statutory nor strong policy considerations at work, nor is any legal conclusion involved. As the Ehrhard opinion directly stated, the presumption as to the actual driver arose because all of the circumstances of the case, including evidence as to the last known driver, showed that it was more probable than not that that driver was still driving at the time of the accident. As in any tort case, that presumption could have been rebutted had the defense been able to go forward with evidence sufficient to dispel the presumption. Since it apparently could not, the court simply held that the plaintiff’s circumstantial evidence showed that it was more probable than not that the defendant was driving at the time of the accident. See Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971).
In the cases before us, the Giorlan-dos, as plaintiffs, had the burden of show *1343 ing that it was more probable than not that Patrick was driving, and the Coons, as plaintiffs, had the same burden as to Joann. After stating to the jury the presumption as to the last known driver, the trial judge concluded this instruction as follows:
This presumption is rebutted if you find from the evidence that Joann was in fact driving the vehicle at the time of the accident.
This instruction was basically correct as to the Coons’ burden of proof in their plaintiffs’ suit, because to prevail they were required to show that more probably than not Joann was driving. While the statement that the jury had to find that Joann “was in fact driving”, rather than “more probably than not” driving may have been an overstatement of the Coons’ requisite level of proof, if this was erroneous the error went in favor of the Giorlandos and their insurer rather than against them. Thus, their allegation that they were prejudiced by an improper jury instruction is without merit.
Appellants argue, in the alternative, that even if the jury charge was proper, the jury committed manifest error in finding that more probably than not Joann was driving. Again we disagree. In Canter v. Koehring Co., 283 So.2d 716 (La.1973) the standard for appellate review of factual findings was set forth:
“When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great way to factual conclusions of the trier of fact; where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own, evaluations and inferences are as reasonable, (at 724)
With this in mind, we turn to the evidence bearing on the question of who was driving the car.
The most compelling evidence heard by the jury was the testimony of Lanny Schwartz, a fireman, who crawled into the still upside down vehicle to help extricate the occupants. Schwartz arrived on the scene a few minutes after the accident with a fire rescue team. An attempt was made to open the passenger door with pry bars, but this proved futile. A hydraulic tool was then employed and the passenger door was finally opened. Upon opening the door, the first person seen was Patrick. Schwartz said that he and other members of the rescue team tried to pull the boy out, but noticed that his right foot was caught in some mangled metal between the floor and the passenger door. After prying his foot loose, they still could not pull him out, so Schwartz crawled into the car through the space between the passenger seat and the center door post. Once inside, he saw that Patrick’s head and chest were behind the back of the driver’s seat, while his buttocks were slightly below the passenger seat. He described him as being basically in an upside down sitting position, but with his head and upper torso leaned over behind the driver’s seat. Schwartz further stated that it was the pressure of the two seats that was holding him in suspension, and that to free him, he simply pulled the passenger seat back, thus releasing the pressure. Once this was done, the body came down, and the other team members were able to pull the boy out of the passenger door feet first.
His testimony as to the location of the girl was as follows:
“There was a girl inside the automobile. She was in a sitting position, but upside down up against the steering wheel, and her legs were hanging up under the dash over the steering wheel and in a sitting position, almost resting on her head.”
He further noted that a part of the problem in freeing the boy was that the pressure of the steering wheel against the girl’s abdo *1344 men and consequently on the back of the driver’s seat, was also putting pressure on Patrick, and thus keeping him suspended. The pressure was also keeping the girl in place. When that pressure was released, she came down about two inches, and was then resting on the steering wheel. His description of her position at this point was that her legs were up under the dash above the steering wheel, her buttocks were in the seat, her stomach was up against the steering wheel, and her head was tilted to one side. To remove her, Schwartz gradually edged her head and upper body toward the passenger door and the rescue crew then pulled her out of that door head first.
Joe Cambre, a second member of the rescue squad working outside the car, testified similarly. He stated that before attempting to extricate the passengers he looked into the car from the driver’s side. He described the girl’s position as being “closer to the driver's side of the automobile, kind of hanging over the steering wheel”. The boy’s position was described as “lying across the girl with his feet toward the passenger side and his head toward the driver’s side window”. He also stated that although he did not recall the boy’s right foot being caught in metal, he did recall having to remove the floor mat to give the medical personnel access to the broken ankle. Cambre helped remove the boy, but then turned to other duties, and did not help with the girl.
The remaining testimony as to the identity of the driver came from experts. In the medical area, both sides presented evidence relating to the most likely positions of the passengers as indicated by the injuries they sustained. The autopsy reports showed that Joann died of a broken neck, and also had a ruptured right kidney. Patrick died of internal injuries including a ruptured diaphram, lacerated liver and spleen and head injuries. He also had a broken right thigh, left ankle, and right foot, and dislocated bones in the pelvic area.
Dr. Monroe Samuels, a pathologist, testified for the Giorlandos. After reviewing the police report and autopsy protocols, he concluded that the boy was most probably driving. He based his opinion on the nature of Patrick’s injuries which he found compatible with steering wheel impact. More particularly, he noted that rupture of internal organs is commonly a result of the driver hitting the steering wheel either with the chest or abdomen. He noted that Patrick did not have surface bruises on his chest or a separated sternum, both typically caused by striking the chest on the wheel. However, he stated that a blow from the bottom of the steering wheel in the abdomen would result in upward pressure on the organs and cause the types of injuries found here. As to Joann, the absence of such injuries indicated to him that she was probably not driving.
On the other hand, Dr. Alvaro Hunt, the pathologist who actually performed the autopsies and who was called by the Coons, came to the opposite conclusion. He stated that Patrick’s injuries were not compatible with striking the steering wheel because there were no surface injuries, or sternum and anterior rib damage. He concluded that Patrick’s injuries were instead more compatible with hitting a broad flat surface such as the dash board. In the case of Joann, he concluded that she had struck her head on the front doorpost near the roof, thus causing a sudden backward motion of her head which broke her neck. He further thought that her ruptured kidney was caused by striking her side on either the steering wheel or the console.
Dr. Stephen Cowin, a biomedical engineer, who also testified for the Coons, agreed with Dr. Hunt’s conclusion that the girl was driving. Like Dr. Hunt, he concluded that the girl struck her head on the door post. However, his opinion as to Patrick was that just before impact he braced himself on the floor board, and when the car struck the post, the force was transmitted directly through the boy’s body. He further testified that the broken thigh, foot and ankle, and the dislocated pelvic bones, as well as the injuries to the internal or *1345 gans, were all typical injuries found in people who fall from high places and land on their feet, and that the impact on Patrick’s braced body had a similar effect.
The final expert, called by the Giorlandos was Everett Kennedy, a specialist in passenger safety and accident reconstruction as it relates to the movement of automobile occupants during crashes. It was his opinion that Patrick was the driver, again based on the nature of the injuries. He stated that during accidents, and particularly during those where the car rolls, the occupants are thrown all over the car, and it is often impossible to determine from their post-accident positions where they were originally sitting. Because of this, he looked to the type of injuries sustained, and, as Dr. Samuels, concluded that Patrick had struck the steering wheel. On cross examination, however, the following hypothetical question was asked:
“Now, you said roll over or rotating type accidents people go all over the place, if I ask you to assume, Mr. Kennedy, that the rescue squad members found Mr. Coon, Patrick Coon, with his feet in the passenger’s foot well, his buttocks as if they were sitting in the passenger’s seat and also ask you to assume that those same rescue squad members found Ms. Giorlando with her feet up under the dashboard on the driver’s side hanging over the steering wheel. Based upon those assumptions, would you find that inconsistent with your opinion about who’s the driver and who’s the passenger?”
After noting that that was not his understanding as to the post-accident positions of the bodies, Kennedy concluded that:
“For a final resting place, that would be inconsistent with my opinion and where they were initially.”
As this review of the evidence shows, the only direct evidence as to where the bodies were found was the testimony of firemen Schwartz and Cambre. Both placed Patrick’s legs and buttocks on the passenger side, and Joann’s legs over the steering wheel. Moreover, it was Schwartz’s clear testimony that the girl was sitting upside down in the driver’s seat and was pinned there by the steering wheel. Additionally, even Mr. Kennedy admitted that if this is where the bodies were found, his theory that the boy was driving would have been different. Based on this evidence, it is clear that the conclusion of the jury was founded on reasonable evaluations of credibility and reasonable inferences of fact, and we thus find no manifest error in its determination that more probably than not Joann was driving the car.
The next error urged by the Giorlandos is that the trial court should not have permitted Dr. Hunt to give an opinion as to who was driving. They argue that because Dr. Hunt had access to the police report as well as his own investigator’s report, both of which indicated that the girl was driving, his expert opinion was inadmissible because it was tainted by hearsay. With the jury removed, Dr. Hunt carefully explained that in reaching his conclusion he looked at every bit of information available to him, including police and investigator reports. He further testified that such background information is essential because without it, it would be impossible to make any determination of what may have happened to someone. He noted, however, that in reaching his opinion in this case, he was not controlled by conclusions as to the girl being the driver as found in the police and investigator reports, but rather considered all available information and reached his own conclusion independently.
The trial judge ruled that Dr. Hunt could give his opinion, but refused to permit reference to any conclusions in the police and investigator reports as to who was driving.
On direct examination, he was asked by Mr. Blue, the Coons’ attorney, whether he could form an opinion in this case based on only the autopsies and the following hypothetical facts: that two people had been in a high speed auto accident wherein the car struck a post and turned over and that they had been brought to the *1346 hospital with serious internal injuries. He stated that he could do so, and had concluded from this background information and the nature of the injuries that the girl was the driver.
In this circumstance, we find no error in permitting Dr. Hunt to give his opinion. The bare facts of the hypothetical put to this expert were not only based on evidence previously heard by the jury, but these facts were never realistically in dispute. See Bailey v. Douglas, 478 So.2d 172 (La. App. 3rd Cir.1985).
Appellants similarly allege that the hypothetical facts given to the doctor were taken directly from the report of the coroner's investigator, who did not testify, and the hypothetical was therefore inadmissible hearsay. The substance of this argument seems to be that because Mr. Blue was allegedly leafing through that report as he put the hypothetical to Dr. Hunt that the hypothetical was improper. There is no way to determine from the record whether this in fact occurred, but whether it did or not is irrelevant. First, the jury was never informed of the existence of the investigator's report, and therefore could not have been influenced by it, and second, as noted above, the hypothetical was not based on information unique to that report, but rather on factual allegations already well known to the jury. This allegation is thus also without merit.
Appellants next urge that the trial judge erred in excluding evidence of Patrick’s treatments at a mental institution over a year before the accident. This proffered evidence showed that the youngster had a bad temper, and had had some difficulty in adjusting to discipline, both at school and at home. Appellants argue that this evidence was relevant to show that Patrick’s disposition was such that he, rather than Joann, would have been prone to drive recklessly and thus he was involved in an accident. The trial judge ruled that the evidence was irrelevant to the factual issue of who was driving at the time of the accident.
The general rule as to relevance is that the evidence must have some probative value, and be reasonably connected to the transaction in question. In addition, the trial judge is granted a great deal of discretion in assessing the probative value of the proffered evidence. Moore, Romero & Co. v. Nan Corp., 458 So.2d 675 (La.App. 3rd Cir.1984).
We, like the trial judge, fail to see how this evidence had any bearing on this case. Nothing in the proffered testimony or evidence made reference to Patrick’s driving history or ability, nor was there any other evidence to show that on the night in question that the boy was in an angry or upset state. Finally, the Coons both testified at some length about Patrick’s temper, and his problems at school and at home with discipline. In this circumstance, the excluded evidence would merely have been cumulative, and the appellants thus suffered no prejudice by its exclusion. We therefore rule that the trial judge did not abuse his great discretion in excluding this evidence.
The other issue before us concerns cross-examination of Mr. Kennedy by Mr. Litch-field. This question requires a more precise statement of the procedural posture of the cases. Originally the Giorlandos, represented by James Quinlivan, Jr., sued the Coons and their insurer, referred to here as Reliance Insurance Co., represented by John Litchfield. In the second suit, the Coons, represented by George Blue, Jr., sued the Giorlandos and their insurer, represented by Edward Rodrigue, Jr. The two suits were consolidated for trial. The order of trial was fixed as follows: Quinli-van would present his case for the Giorlan-dos as plaintiffs, followed by Blue’s presentation of the Coons-plaintiffs’ suit. Litch-field would then present his defense to the Giorlandos’ suit, followed by Rodrigue’s defense to the Coons’ suit. Quinliven and Blue would then be allowed rebuttal.
Quinliven and Blue duly presented their respective cases, with all parties generally participating in direct and cross-examina *1347 tion. When Litchfield’s turn came, he decided to rely on the evidence presented in Blue’s case in chief, apparently deeming it sufficient to his defense against the Gior-landos-plaintiffs’ suit. Rodrigue then went forward with only one witness, the expert Everett Kennedy. After his direct testimony, Litchfield rose to cross-examine Mr. Kennedy, to which Quinliven and Rodrigue objected. Both argued that because Litch-field was not technically a party to the Coons-plaintiffs’ suit in which Rodrigue had called Kennedy in defense, he could not cross-examine Rodrigue’s expert, but only Blue could do so. The trial judge ruled that regardless of the procedural posture, Litchfield’s interest were directly adverse to those of Rodrigue, and that cross-examination was proper.
Neither party has cited any state jurisprudence on this point, and we likewise find none. However, in Green v. Philadelphia Gas Works, 333 F.Supp. 1398 (E.D. Penn.1971), a similar issue was resolved in favor of cross-examination. There, one plaintiff sued two defendants in separate actions which were consolidated for trial. The plaintiff objected to the trial judge permitting the defendants to cross-examine each other’s witnesses. The trial judge noted that because each defendant could be held solely liable, or be required to contribute to the verdict, they had conflicting interests, and therefore that cross-examination was proper.
In the present matter it is obvious that Litchfield and Rodrigue had conflicting interests. One or the other’s client was almost certainly going to be cast in judgment, and any testimony tending to show that Joann was not driving was clearly going to show to Litchfield’s detriment that Patrick was driving. In this circumstance we hold that the trial judge was correct in permitting Litchfield to cross-examine Mr. Kennedy.
Appellants further urge that the trial judge erred in denying a motion for a new trial or alternatively, a judgment notwithstanding the verdict. While we have serious reservations as to whether such rulings are appealable, we need not reach those issues. Having determined that the jury’s verdict was not manifestly erroneous, these questions are now moot.
Northern Assurance Company has also urged that the jury award to Mr. & Mrs. Coon of $50,000 each for the death of their son was excessive. We disagree. We find no manifest error on the part of the jury in the amount awarded here. We hold the award to be fair and equitable.
For the foregoing reasons, the judgment appealed from is affirmed in all aspects.
AFFIRMED.