CRAIN, Judge.
Dwayne L. Dobson was hired by Rumsey Davidge to remove several trees from Da-vidge’s property which were located approximately two to three feet from a ten foot right-of-way owned by LP & L adjacent to the east boundary of the Davidge property. Overhead electric distribution lines were located on the right-of-way at a height of 17 feet.
Dobson successfully cut one tree and proceeded to cut the second tree in sections. The second tree was located approximately 18 inches from the right-of-way and was approximately 50 to 60 feet in height. He climbed the tree and cut the top ten foot section which fell towards, and brushed against, one of the overhead electric distribution lines. Part of Dobson’s equipment was a safety or flip line consisting of nylon rope wrapped around a metal coil. The safety line wrapped around the tree and attached to his safety harness. At the time of the accident, approximately thirteen inches of the line dangled from Dobson’s safety harness. While in the process of descending the tree, with his back to the power lines, the dangling end of the safety line came into contact with a bare high voltage primary distribution line resulting in Dobson’s death.
This wrongful death action against LP & L was instituted by Dobson’s widow, Teri Dobson, individually and as administratrix and tutrix on behalf of the minor children born of the marriage. After trial on the merits the trial court rendered judgment in favor of plaintiff in the sum of $1,034,-054.50 with judicial interest. From this judgment LP & L appeals alleging four assignments of error: the trial court’s determination that LP & L breached a duty to decedent; the trial court’s failure to find that decedent’s actions constituted either negligence or assumption of risk; the denial of defendant’s motion for continuance or motion to strike a witness; the trial court’s *1336 refusal to admit the out of court statement of an eyewitness.
LIABILITY OF LP & L
The liability, if any, of LP & L must be determined under a duty risk analysis. Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982). The transmission of electricity through a bare electric distribution line caused the accident. When a utility company recognizes that the transmission of electricity through its lines poses an unreasonable risk of harm to another it has the duty to exercise reasonable care to prevent the harm from taking effect. Levi v. Southwest Louisiana Electric Member Cooperative (SLEMCO), 542 So.2d 1081 (La.1989). A power company is required to recognize that its conduct presents a risk of harm to another when a reasonable person possessing superior attributes (such as perception of the circumstances, intelligence, knowledge, skill and experience in electrical safety) would recognize the risk of harm presented by the conduct. Id. at 1084.
The Davidge residence is situated in a heavily wooded residential area of the City of Hammond. Tree limbs occasionally brushed the power lines causing sparks and power outages. Mrs. Davidge made numerous complaints of such to LP & L and requested that LP & L either trim or remove the trees which she feared would cause electrical problems. Fires caused by tree limbs coming into contact with the power lines occurred in the months of December, 1984, and February, 1985, in the vicinity of the Davidge property and the LP & L right-of-way. Dobson’s death by electrocution occurred on April 24, 1985. Under these circumstances we find that LP & L was required to recognize the risks posed by the presence of the bare primary distribution lines in close proximity to trees, particularly in a location where, on numerous occasions, limbs had come into contact with the power lines causing sparks, fires, and power outages. One of the hazards ’ posed is one which occurred here, that while in the process of trimming tree limbs or felling trees, a person would accidentally or negligently come into contact with the bare wire resulting in injury.
LP & L contends that it took reasonable precautions to prevent the harm in that the bare primary wire was insulated by isolation. It also cites as another precaution taken its willingness to assist persons working in the vicinity of energized electric distribution lines. LP & L asserts that when notified of work to be performed in the vicinity of its power lines its policy is to either de-energize the lines, drop the lines or temporarily shield the lines until the danger is no longer present to the worker. However, Dobson did not notify LP & L of his intention to remove the tree at issue and thus LP & L was unable to provide the assistance which would have prevented the accident.
A risk is determined to be unreasonable when the likelihood of injury resulting from the conduct together with the gravity of the harm outweigh the interest sacrificed to avoid the risk. Levi, 542 So.2d at 1086.
In addition to the precautions taken by LP & L there are other precautions that could have been taken to avert the injury. Among these are: factory insulation of the bare primary distribution wires; trimming the tree limbs overhanging the right-of-way; removing the tree; arranging to have the tree removed by a qualified professional; recommending a qualified professional to remove the tree; educating the public in general, and professional tree trimmers in specifics regarding the dangers of working in the vicinity of energized electric distribution lines; and educating professionals regarding LP & L’s policy of assistance upon notification.
After careful review of the record we find the precautions taken by LP & L inadequate and conclude that the burden of taking adequate precautions to prevent the harm was relatively low. When balancing *1337 the factors we find that the burden of taking adequate precautions is greatly outweighed by the possibility of the harm occurring and the gravity of the resulting injury. Consequently, in failing to take adequate precautions to prevent the harm LP & L breached its duty to decedent and this breach was a legal cause of the accident.
NEGLIGENCE OF DECEDENT
In the second assignment of error appellant contends that the trial court erred in not finding that decedent’s conduct was negligent, in failing to apply comparative negligence or in not finding that decedent assumed the risk of injury.
From a review of the record we find that the actions of decedent were a substantial cause of the accident. Decedent was aware of the location and existence of the electric transmission lines which were clearly visible at the time of the accident as is exemplified by the fact that he was attempting to cut the tree in such a manner that it would fall on the Davidge property away from the electric distribution lines. Decedent worked in the tree and descended the tree with his back to the electric distribution lines. The safety line dangling below him, which eventually came into contact with the power line, was composed of conductive material. On the day prior to the accident Dobson was engaged in cutting trees in Davidge’s neighborhood. At Dobson’s request, LP & L dropped a service line in order for Dobson to successfully complete his work. However, on the day of the accident, for whatever reason, Dob-son did not request the similar assistance of LP & L.
Robert Briggs, consultant engineer, who testified on behalf of plaintiff, stated that decedent was obviously not knowledgeable of the dangers associated with working near high voltage electricity because a reasonable knowledgeable person who climbs and trims trees for a living would not have performed the work in the manner it was performed.
Michael Joseph Frenzel, safety consultant, testified on behalf of plaintiff that the recommended distance from electric conductors from which neophyte tree trimmers should work is ten feet. According to the standards of the National Arborist Association, only qualified line-clearance tree trimmers are qualified to work within ten feet from energized conductors; non-line clearance tree trimmers are required to notify the utility owner/operator prior to commencing any work within the ten foot clearance; conductive tools should not come in contact with an energized line; indirect contact with the conductor should be avoided; non-conductive tools should be used when there is a possibility that a limb might make contact with the conductor. In Frenzel’s opinion, decedent violated various safety standards.
Frederick Michael Brooks, consultant electrical engineer, testified on behalf of defendant that decedent violated numerous safety standards established by OSHA (Occupational Safety and Health Administration), and the National Arborist Association in failing to notify LP & L prior to commencing work; working within ten feet of the power line; descending the tree with his back to the power lines; using conductive material in the safety belt; and in not using proper personal protective equipment.
A person has the duty to exercise ordinary care for his own safety. See Soileau v. South Central Bell Telephone Co., 406 So.2d 182 (La.1981). Plaintiff clearly failed to do so. After careful review of the record we find that trial court was clearly wrong in determining decedent was not negligent. Taking into account the superi- or knowledge and position of the defendant, we conclude that fault should be apportioned 70% to decedent and 30% fault to defendant.
DENIAL OF MOTION TO STRIKE OR ALTERNATIVE MOTION FOR CONTINUANCE
Appellant contends that on October 9, 1987, defendant was notified by plaintiff *1338 that a safety expert had been retained to testify on behalf of plaintiff. The safety expert was deposed on October 22, 1987, and defendant alleges it was unable to retain an independent expert in time for trial which was scheduled to commence on November 2, 1987. The motion was argued on the first day of trial and denied.
The granting of a continuance is discretionary. La.C.C.P. art. 1601. Defendant alleges it was prejudiced by its inability to retain the services of an independent safety expert due to the late addition of plaintiffs safety expert to plaintiffs list of witnesses. However, Frederick Michael Brooks testified on behalf of defendant and was accepted by the court as an expert in the fields of electrical engineering, electrical accident reconstruction and safety procedures regarding working in the vicinity of power lines. Additionally, plaintiffs expert was deposed prior to trial on October 22. Thus, the failure to grant the continuance or to strike the witness was not an abuse of the trial court’s discretion.
OUT OF COURT STATEMENT
Randy Thomas (Dixon) (Clutz) was working with decedent at the time of the accident and allegedly witnessed the accident. He later gave a statement to the Hammond Police Department. Defendant was unable to locate Dixon both prior to and at the time of trial. Defendant sought to have the statement admitted under the business record exception to the hearsay rule and it was ruled inadmissible. Defendant alleges it was unduly prejudiced by the ruling.
The voluntary written statement made by Randy Thomas (Dixon) (Clutz) to the police five days after the accident is not admissible under the business records exception to the hearsay rule because the report was not made in the ordinary course of business from the personal knowledge of a police officer or from information furnished by a person having a business duty to observe and report the facts. Southern County Mutual Insurance Co. v. Bryant, 385 So.2d 1286 (La.App. 3d Cir.1980).
Defendant also sought to have the statement admitted because plaintiffs expert, Frenzel, reviewed the police reports, among other things, prior to trial. However, Frenzel testified that no part of his opinion was based on Thomas’ statement. Further, the facts of the hypothetical proposed to Frenzel were based on evidence previously heard by the jury. We find no error in the trial court’s ruling of inadmissibility. See Giorlando v. Northern Assurance Company of America, 529 So.2d 1340 (La.App. 5th Cir.) writ denied, 532 So.2d 1389 (La.1988).
Accordingly, the judgment of the trial court is affirmed in part and reversed in part. Costs of this appeal are assessed jointly against appellee and appellant.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.